Request of the House of Representatives
No. 2008-292

OPINION OF THE JUSTICES
(Voting Age in Primaries)

Submitted: May 7, 2008
Opinion Issued: May 19, 2008

266

*David Frydman*, house legal counsel, and *Jeffrey A. Meyers*, senate legal counsel,

*Twomey Law Office*, of Concord (*Paul Twomey* on the memorandum),

*To the Honorable House of Representatives*:

The following response is respectfully returned:

Senate Bill (SB) 436 proposes to amend RSA 654:1 (Supp. 2007) by adding a new section, RSA 654:1, III, which would provide: "A person who is 17 years of age, who otherwise meets the eligibility requirements of paragraph I, may vote at a state primary election or a presidential primary election preceding a general election at which the person will be 18 years of age." SB 436 also proposes to amend RSA 654:7 (Supp. 2007) to add the following emphasized language to the voter registration form prescribed by the secretary of state: "I understand that to vote in this city/town, I must be 18 years of age, *or 17 years of age to vote in a state primary or presidential primary preceding a general election at which I will be 18 years of age, and that* I must be a United States citizen, and I must be domiciled in this city/town." SB 436 also proposes to add a new statute, RSA 654:7-c, "Registration by 17-Year-Old Voting at Primary Election," which would provide:

I. A person who is 17 years of age, who otherwise meets the eligibility requirements of RSA 654:1, I, may register to vote at a state primary election or a presidential primary election preceding a general election at which the person will be 18 years of age. Such person may only register at the polling place on the applicable election day.

II. If the supervisors of the checklist determine that the person registering under this section is qualified to vote, the person shall be entitled to vote as if his or her name is on the checklist. The supervisors shall retain the person's voter registration form and shall add the person's name to the checklist at their meeting next following the person's eighteenth birthday.

Finally, SB 436 proposes to amend RSA 654:12, I(b) (Supp. 2007) to include the following emphasized language: "AGE. Any reasonable documentation indicating applicant is 18 years of age or older, *or that applicant is 17 years of age and will be 18 years of age on the date of the general election if the person is registering under RSA 654:7-c.*"

We have been asked to give our opinion on two questions: first, whether enactment of SB 436 would "violate Part I, Article 11 of the Constitution of New Hampshire," and second, whether enactment of SB 436 would "violate Part I, Article 28-a, of the Constitution of New Hampshire." We answer the first question in the affirmative and the second question in the negative. Although those submitting memoranda address the issue, we have not been asked and therefore do not opine upon whether SB 436 infringes upon the associational rights of political parties guaranteed by the First Amendment to the United States Constitution.

*I. Part I, Article 11*

Part I, Article 11 of the New Hampshire Constitution provides, in pertinent part: "All elections are to be free, and every inhabitant of the state of 18 years of age and upwards shall have an equal right to vote in any election." To interpret the meaning of this provision, we examine its purpose and intent. *See Baines v. N.H. Senate President*, 152 N.H. 124, 133 (2005). In so doing, "we will give the words in question the meaning they must be presumed to have had to the electorate when the vote was cast." *Opinion of the Justices*, 126 N.H. 490, 495 (1985). "By reviewing the history of the constitution and its amendments, the court endeavors to place itself as nearly as possible in the situation of the parties at the time the instrument was made, that it may gather their intention from the language used, viewed in the light of the surrounding circumstances." *Baines*, 152 N.H. at 133 (quotation omitted). "The language used by the people in the great paramount law which controls the legislature as well as the people, is to be always understood and explained in that sense in which it was used at the time when the constitution and the laws were adopted." *Id.* at 133-34 (quotation omitted).

At its inception in 1784, Part I, Article 11 provided: "All elections ought to be free, and every inhabitant of the State, having the proper qualifications, has equal right to elect and be elected into office." *Fischer v. Governor*, 145 N.H. 28, 32 (2000) (quotation omitted). Between its original enactment in 1784 and its final amendment in 1984, Part I, Article 11 has been amended seven times. *See* S. MARSHALL, THE NEW HAMPSHIRE STATE CONSTITUTION: A REFERENCE GUIDE 55 (2004); *see also Fischer*, 145 N.H. at 33-36 (discussing, in detail, 1912, 1942 and 1976 amendments to Part I, Article 11). For our purposes, the 1976 amendments to Part I, Article 11 that were a result of the 1974 constitutional convention are the most pertinent.

Before Part I, Article 11 was amended in 1976, it did not contain an age qualification, but rather stated that every inhabitant with the "proper qualifications" had an equal right to vote. *See Fischer*, 145 N.H. at 36-37. Before 1976, the age qualification for voting provision was found in Part II, Article 28 of the State Constitution.

Part II, Article 28 was enacted in 1784 and provided that male inhabitants twenty-one years of age and older who paid their poll tax were eligible to vote for senators. *See* MARSHALL, *supra* at 148. Other provisions of the constitution provided that those qualified to vote for senators were also qualified to vote for representatives, the governor and councilors. *Id.* In 1958, the reference to "male" inhabitants was removed. *Id.*

The 1974 constitutional convention voted to amend Part I, Article 11 in several respects and to repeal Part II, Article 28 because the amended Part I, Article 11 would incorporate the age qualification. *See* JOURNAL OF CONSTITUTIONAL CONVENTION 465 (June 26, 1974), 521-23 (Appendix A); *Fischer*, 145 N.H. at 36. The amendments were ratified in 1976. MANUAL FOR THE GENERAL COURT 687-88 (1977).

The ratified amendments had their genesis in Resolution 86 of the 1974 constitutional convention. *See* JOURNAL OF CONSTITUTIONAL CONVENTION 584 (Index). Resolution 86 was a resolution "[r]elating to the qualifications of voters and the administration of elections." JOURNAL OF CONSTITUTIONAL CONVENTION 33 (May 15, 1974), 434 (June 20, 1974), 521 (Appendix A). Its stated purpose was, in part, to provide "that the minimum age of voters be reduced to eighteen." JOURNAL OF CONSTITUTIONAL CONVENTION 434 (June 20, 1974), 521 (Appendix A).

Resolution 86 was referred to the committee on the bill of rights. JOURNAL OF CONSTITUTIONAL CONVENTION 33 (May 15, 1974). The report of the committee stated that another purpose of the resolution was to "simplif[y] the present wording of the Constitution." JOURNAL OF CONSTITUTIONAL CONVENTION 177 (June 12, 1974).

As reported out of committee, the resolution proposed amending Part I, Article 11 to state, in pertinent part, that "[a]ll elections are to be free, and every inhabitant of the state of eighteen years of age and upwards shall have an equal right to vote in any election." JOURNAL OF CONSTITUTIONAL CONVENTION 178 (June 12, 1974). The text of Resolution 86 ultimately adopted by the constitutional convention retained this language. JOURNAL OF CONSTITUTIONAL CONVENTION 521 (Appendix A). Part VI of the resolution proposed repealing Part II, Article 28. JOURNAL OF CONSTITUTIONAL CONVENTION 523 (Appendix A).

The ballot question regarding age at voting submitted to the citizenry in 1976 reflected the convention's intent that the amendments to Part I, Article 11 and Part II, Article 28 lower the minimum voting age to eighteen. Question eight inquired, in pertinent part: "Are you in favor of amending the Constitution to make the following changes relating to elections: (a) to reduce the minimum age of voters to eighteen." *Fischer*, 145 N.H. at 38 (quotation omitted); *see* JOURNAL OF CONSTITUTIONAL CONVENTION 523 (Appendix A); MANUAL FOR THE GENERAL COURT 688 (1977).

■ This history reveals that the intended purpose of adding an age qualification to Part I, Article 11 and deleting one from Part II, Article 28 was to lower the minimum voting age to eighteen. Whereas before Part I, Article 11 was amended in 1976 to include an age qualification, the minimum voting age contained in Part II, Article 28 was twenty-one years

of age, after the amendments, it became eighteen years of age. Viewing the language of the 1976 amendments in light of all of the surrounding circumstances, *see Baines*, 152 N.H. at 133, which necessarily includes the ballot question submitted to the electorate, *see Fischer*, 145 N.H. at 37-38; *Concrete Co. v. Rheaume Builders*, 101 N.H. 59, 60 (1957), we conclude that the phrase "every inhabitant of the state of 18 years of age and upwards shall have an equal right to vote in any election" establishes eighteen as the minimum age for voting. The meaning that the electorate must have given to the phrase "every inhabitant of the state of eighteen years of age and upwards shall have an equal right to vote in any election" is that only those who are eighteen years of age and older are eligible to vote in an election; those under the age of eighteen are ineligible. We conclude, therefore, that SB 436, which allows individuals who are younger than eighteen years of age to vote in presidential and state primary elections, violates Part I, Article 11.

Relying upon our decision in *Fischer*, the New Hampshire Civil Liberties Union asserts that, despite the language of Part I, Article 11, the legislature has authority to set a minimum age for voting that is lower than eighteen years of age. We disagree.

*Fischer* concerned the constitutionality of RSA 607-A:2 (2001) and RSA 654:5 (1996), statutes that disenfranchise incarcerated felons. *See Fischer*, 145 N.H. at 29. The plaintiff in *Fischer*, an incarcerated felon, had requested an absentee ballot for the next election. *Id.* at 29-30. The city clerk sent him a copy of RSA 607-A:2. *Id.* at 30. The plaintiff petitioned for declaratory judgment, arguing that RSA 607-A:2 and RSA 654:5 violated his right to vote under Part I, Article 11. *Id.*

We ruled that although Part I, Article 11 disenfranchises individuals convicted of "treason, bribery, or any willful violation of the election laws," the legislature retained the authority to disenfranchise additional individuals, such as incarcerated felons. *See id.* at 34, 39. We observed that the legislature, historically, had always had the authority to determine voter qualifications beyond those set forth in the constitution. *See id.* at 32-35. This authority was not removed, we held, when the voters voted to amend Part I, Article 11 in 1976. *See id.* at 38-39. To the extent that the amendments to Part I, Article 11 could be read to have removed this authority, we concluded that they were ineffective because removing this authority was not one of the stated purposes of the amendments and because voters had no notice that they were removing it. *Id.* at 37-39.

The legislative authority we recognized in *Fischer* was to define voter qualifications *beyond* those in Part I, Article 11. *Id.* at 35. We did not recognize legislative authority to define voter qualifications *contradicting*

those in Part I, Article 11. In this case, where Part I, Article 11 establishes the minimum voting age as eighteen years of age, we conclude that the legislature has no authority to set a different minimum voting age. Indeed, contrary to the assertions of the New Hampshire Civil Liberties Union, the legislature has *not* historically had the authority to set age qualifications for voters. That authority has always resided in the constitution: first in Part II, Article 28, which set the minimum voting age at twenty-one, and now in Part I, Article 11, which sets it at eighteen.

The Speaker of the New Hampshire House of Representatives (Speaker) and President of the New Hampshire Senate (Senate President), in contrast to the New Hampshire Civil Liberties Union, concede that Part I, Article 11 sets the minimum voting age at eighteen. As they state: "The[ ] amendments [to Part I, Article 11] lowered to 18 the age at which one was entitled to the equal right to elect one's elected officials." They argue, however, that whether an individual has achieved the requisite age must be measured as of the November election. In this way, they contend, an individual who is seventeen by the time of the primary elections, but who will be eighteen as of the November election, is eligible to vote. Part I, Article 11, however, exclusively gives those who are "eighteen years of age and upwards" an "equal right to vote in any election." Thus, the argument of the Speaker and Senate President would prevail only if a primary election is not an "election" within the meaning of Part I, Article 11.

The purpose and intent of the age qualification in Part I, Article 11 as reflected in its language and history is that it applies to all elections, including primary elections. Part I, Article 11 grants an equal right to vote in *"any* election" to those who are "eighteen years of age and upwards." (Emphasis added.) The use of the word "any" is all-inclusive. The word "any" means "one, no matter what one : EVERY." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 97 (unabridged ed. 2002). The journal of the 1974 constitutional convention further reveals that the intent of this language was, in fact, to be all-inclusive. When asked whether the proposed amendments to Part I, Article 11 applied to constitutional convention elections, Delegate Hall, the vice-chair of the bill of rights committee, explained: "The intention is that [they] will apply to all elections, whether they be for Constitutional Conventions or general primary or special elections." JOURNAL OF CONSTITUTIONAL CONVENTION 180 (June 12, 1974); *see* JOURNAL OF CONSTITUTIONAL CONVENTION 58 (roster of bill of rights committee). Citizens voting on the 1976 ballot question were never notified of any intent to limit the age qualification to certain elections. Rather, they were only asked if they were in favor of "reduc[ing] the minimum age of *voters* to eighteen." *Fischer,* 145 N.H. at 38 (quotation

omitted; emphasis added); *see* JOURNAL OF CONSTITUTIONAL CONVEN-TION 523 (Appendix A); MANUAL FOR THE GENERAL COURT 688 (1977). Viewing the reference to "any election" in Part I, Article 11 as amended, in light of the surrounding circumstances, we conclude that this phrase refers to all elections, including primary elections.

To the extent that either the New Hampshire Civil Liberties Union or the Speaker and Senate President assert that a primary is not an "election" within the meaning of Part I, Article 11 because it is merely a nominating process, we disagree. "[A] primary election which involves a necessary step in the choice of candidates for election . . . , and which . . . controls that choice, is an election" within the meaning of Part I, Article 11. *United States v. Classic*, 313 U.S. 299, 320 (1941). "In so far as the primary election is made an essential part of the election machinery, general provisions as to qualifications of voters are applicable to voters at party primaries." *Totton v. Murdock*, 482 S.W.2d 65, 67 (Mo. 1972) (quotation omitted); *see Classic*, 313 U.S. at 318-19; *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 487 (2006) (Souter, J. concurring in part and dissenting in part).

The Speaker and Senate President also argue that "[p]reventing 17-year-olds who will be 18 years old by the date of the next general election from voting in the primary election imposes a severe restriction on these voters' constitutionally protected equal right to elect their elected officials." To the contrary, because Part I, Article 11 grants an equal right to vote in any election only to those who are eighteen years of age or older, individuals who are seventeen years old have no equal right to vote in any election, including a primary election.

The Speaker and Senate President also state that because, "arguably," an individual who will be eighteen as of the date of the November elections may run for office, even though he or she is only seventeen, it would be absurd to preclude such an individual from voting in primary elections. *See* RSA 655:8 (Supp. 2007) (individual cannot hold office unless he or she is "at least eighteen years of age"); RSA 655:29, IV (Supp. 2007) (individual running for office must aver that he or she "will be at least 18 years of age" on the date of the election for which he or she is a candidate).

Even if we assume, without deciding, that a seventeen-year-old who will be eighteen by the time of the general election may run for an elected office, we fail to see the absurdity of precluding such an individual from voting in the primary. There is no correlation under either the State or Federal Constitutions between voting age and the age at which individuals may hold certain elective offices. Although the State Constitution sets the minimum voting age at eighteen, *see* N.H. CONST. pt. I, art. 11, it prohibits anyone who is not thirty years of age from serving as either a senator or governor.

*See* N.H. CONST. pt. II, arts. 29, 42. Similarly, although the Federal Constitution extends the right to vote to citizens who are eighteen years of age or older, *see* U.S. CONST. amend. XXVI, it requires individuals to be at least thirty years old to be senators, *see* U.S. CONST. art. I, sec. 3, twenty-five years old to be a member of the house of representatives, *see* U.S. CONST. art. I, sec. 2, and thirty-five years old to be President, *see* U.S. CONST. art II, sec. 1. If, as a constitutional matter, the age qualification for voting is not related to the age qualification for certain elective offices, we see no absurdity in the constitution setting one age for voting and the legislature setting another for other elected offices.

## II. Part I, Article 28-a

■■ Part I, Article 28-a of the New Hampshire Constitution provides:

The state shall not mandate or assign any new, expanded or modified programs or responsibilities to any political subdivision in such a way as to necessitate additional local expenditures by the political subdivision unless such programs or responsibilities are fully funded by the state or unless such programs or responsibilities are approved for funding by a vote of the local legislative body of the political subdivision.

This amendment "was designed to prohibit the State from placing additional obligations on local government without either obtaining their consent or providing the necessary funding." *N.H. Munic. Trust Workers' Comp. Fund v. Flynn, Comm'r,* 133 N.H. 17, 22 (1990). The constitutionality of a particular state mandate under this provision "does not hinge solely on whether or not it may be categorized as a new, expanded or modified program." *Opinion of the Justices (Solid Waste Disposal),* 135 N.H. 543, 545 (1992) (quotation omitted). Nor are increased expenditures alone dispositive of whether a responsibility has been expanded. *Town of Nelson v. N.H. Dep't of Transportation,* 146 N.H. 75, 78 (2001). "The primary consideration is the net effect of the program." *Opinion of the Justices (Solid Waste Disposal),* 135 N.H. at 545. "Invoking this constitutional prohibition requires both a mandate of responsibility to the political subdivision and a requirement of additional local political subdivision expenditures by virtue of the mandate." *Town of Nelson,* 146 N.H. at 78 (quotation and brackets omitted).

To determine whether SB 436 constitutes a mandate in contravention of Part I, Article 28-a, we first examine the language of the proposed statutes in the context of existing provisions. *See Opinion of the Justices (Solid Waste Disposal),* 135 N.H. at 545.

Voting and voter registration is governed, in part, by Part I, Article 11 of the State Constitution, which, as previously discussed, gives "every inhabitant of the state of 18 years of age and upwards . . . an equal right to vote in any election," and which provides, in pertinent part, that "[v]oting registration and polling places shall be easily accessible to all persons."

Voting and voter registration is also governed by RSA chapter 654 (1996 & Supp. 2007). RSA 654:1, I, gives every inhabitant of the state, who is a United States citizen, has a "single established domicile for voting purposes," and is "of the age provided for in Article 11 of Part First of the Constitution of New Hampshire," the "right at any meeting or election, to vote in the town, ward, or unincorporated place in which he or she is domiciled." SB 436 proposes to amend RSA 654:1 by adding a new provision, RSA 654:1, III, which gives certain seventeen-year-olds the right to vote in state and presidential primaries.

RSA 654:7 sets forth the standard voter registration form that "shall be used throughout the state"; SB 436 amends this form in certain respects.

RSA 654:7-a (Supp. 2007) and RSA 654:7-b (1997) discuss election day registration. Pursuant to RSA 654:7-a, II: "Any person whose name is not on the checklist but who is otherwise a qualified voter shall be entitled to vote by requesting to be registered to vote at the polling place on election day." "Any person who registers to vote on election day . . . shall be registered to vote at all subsequent town, state and federal elections." RSA 654:7-b. For the purposes of RSA 654:7-a and RSA 654:7-b, "election day" refers, in part, to state primary and general elections. *See* RSA 654:7-a, I. SB 436 adds a new provision, RSA 654:7-c, which pertains to the registration process for certain seventeen-year-old voters.

To determine whether a voter is qualified, the supervisors of the checklist or town or city clerk must require the applicant to produce proof of qualifications as provided in RSA 654:12 (Supp. 2007). *See* RSA 654:7-a, II. RSA 654:12, I and II require an applicant to provide proof of citizenship, age and domicile, and RSA 654:12, III requires an applicant to prove his or her identity. SB 436 adds language to RSA 654:12 that pertains to the proof of age required of certain seventeen-year-olds.

If the supervisors decide to add the applicant's name to the checklist, they must keep the original registration form. *See* RSA 654:13, I (Supp. 2007). If the supervisors elect not to add the applicant's name to the checklist, they must notify the applicant in writing and retain the original registration form as proof that an application was made. RSA 654:13, II (Supp. 2007). SB 436 does not propose to amend these provisions.

 These provisions reveal that SB 436 does not create any new program or require municipalities to accept a new responsibility. Even without SB

436, municipalities are responsible for processing voter registrations. That SB 436 allows certain seventeen-year-olds to register and vote in primary elections "may be a new development," but municipal responsibility for processing all voter registrations is not new. *Town of Nelson,* 146 N.H. at 79. Under these circumstances, we conclude that SB 436 does not create an unconstitutional unfunded mandate. *See id.* at 79-80.

JOHN T. BRODERICK, JR.
LINDA STEWART DALIANIS
JAMES E. DUGGAN
RICHARD E. GALWAY
GARY E. HICKS