Request of the Senate
No. 2009-251

OPINION OF THE JUSTICES
(Voting Age in Primary Elections II)

Submitted: May 4, 2009
Opinion Issued: May 6, 2009

*Jeffrey A. Meyers,* senate legal counsel, filed a memorandum on behalf of the President of the New Hampshire Senate in favor of the constitutionality of Senate Bill 21.

*Peter H. Burling,* of Cornish, and *Kathleen N. Sullivan,* of Manchester, filed a memorandum as members of the New Hampshire Democratic National Committee in favor of the constitutionality of Senate Bill 21.

Brendan P. Bertagnoll, filed a memorandum on behalf of the New Hampshire Legislative Youth Advisory Council, in favor of the constitutionality of Senate Bill 21.

The New Hampshire Senate adopted the following resolution on April 1, 2009, and filed it with the supreme court on April 3, 2009:

"Whereas, SB 21, 'An act enabling certain persons to vote in primaries prior to turning 18 years of age,' is presently pending in the senate; and

"Whereas, SB 21 would provide that a person who is 17 years of age and who otherwise meets voter eligibility requirements may vote at a state primary election or a presidential primary election preceding a general election at which the person will be 18 years of age; and

"Whereas, in Opinion of the Justices (Voting Age in Primaries) issued by the Court on May 19, 2008 in response to the request of the House of Representatives in HR 32 adopted on April 23, 2008, the Court answered in the affirmative the question of whether SB 436 would violate Part I, Article 11 of the New Hampshire Constitution; and

"Whereas, in the same Opinion of the Justices, the Court noted that it had not been asked and therefore did not opine upon whether SB 436 would infringe upon the associational rights of political parties guaranteed by the First Amendment to the United States Constitution; and

"Whereas, the provisions of SB 21 are identical to SB 436; and

"Whereas, the United States Supreme Court has recognized that the freedom of association protected by the First and Fourteenth Amendments to the United States Constitution includes partisan political organization[s]; and

"Whereas, a question has arisen as to whether the First and Fourteenth Amendments to the United States Constitution provide greater protection than do Part I, Article 11 and Part I, Article 32 of the New Hampshire Constitution of the associational rights of any political party such that the legislature may allow an otherwise qualified 17-year-old person to vote in a state or presidential primary that precedes a general election at which the person will be 18 years of age, in order to permit such persons to participate in choosing the party's nominee for the general election; and

"Whereas, it is important that this constitutional question be settled before the bill is enacted; now, therefore, be it

"Resolved by the Senate:

"That the justices of the supreme court be respectfully requested to give their opinion upon the following questions of law:

"1. Would enactment of SB 21 to allow voting in a state primary and presidential primary election by 17-year-old persons who will be 18 years of . age at the next general election, in order to allow such persons to participate in choosing the party's nominee for the general election, infringe upon the associational rights guaranteed to political parties under the First and Fourteenth Amendments to the United States Constitution?

"2. Do the First and Fourteenth Amendments to the United States Constitution provide greater protection than do Part I, Article 11 and Part I, Article 32 of the New Hampshire Constitution of the associational rights of political parties such that the legislature may allow an otherwise qualified 17-year-old person to vote in a state or presidential primary that precedes a general election at which the person will be 18 years of age, as would be permitted under SB 21?

"3. If the Court answers the second question in the affirmative, would SB 21 be constitutional notwithstanding the Opinion of the Justices, No. 2008-292, issued on May 19, 2008?"

*To the Honorable Senate*:

The following response is respectfully returned:

Senate Bill (SB) 21 proposes to amend RSA 654:1 (2008) by adding a new section, RSA 654:1, III, which would provide: "A person who is 17 years of age, who otherwise meets the eligibility requirements of paragraph I, may vote at a state primary election or a presidential primary election preceding a general election at which the person will be 18 years of age."

SB 21 also proposes to amend RSA 654:7 (2008) to add the following emphasized language to the voter registration form prescribed by the secretary of state: "I understand that to vote in this city/town, I must be at least 18 years of age, *or 17 years of age to vote in a state primary or presidential primary preceding a general election at which I will be 18 years of age, and that* I must be a United States citizen, and I must be domiciled in this city/town."

Additionally, SB 21 proposes to add a new statute, RSA 654:7-c, "Registration by 17-Year-Old Voting at Primary Election," which would provide:

> I. A person who is 17 years of age, who otherwise meets the eligibility requirements of RSA 654:1, I, may register to vote at a state primary election or a presidential primary election preceding a general election at which the person will be 18 years of age. Such person may only register at the polling place on the applicable election day.

> II. If the supervisors of the checklist determine that the person registering under this section is qualified to vote, the person shall be entitled to vote as if his or her name is on the checklist. The supervisors shall retain the person's voter registration form and shall add the person's name to the checklist at their meeting next following the person's eighteenth birthday.

Finally, SB 21 proposes to amend RSA 654:12, I(b) (2008) to include the following emphasized language: "AGE. Any reasonable documentation indicating the applicant is 18 years of age or older, *or that the applicant is 17 years of age and will be 18 years of age on the date of the general election if the person is registering under RSA 654:7-c."*

SB 21 is identical to the legislation upon which we were asked to opine in *Opinion of the Justices (Voting Age in Primaries)*, 157 N.H. 265, 267 (2008)

(*Voting Age I*). In *Voting Age I*, we were asked whether the proposed legislation violated Part I, Article 11 of the New Hampshire Constitution, which provides, in pertinent part, that "every inhabitant of the state of 18 years of age and upwards shall have an equal right to vote in any election." *Voting Age I*, 157 N.H. at 267. We concluded that the proposed legislation, which allowed individuals who were younger than eighteen years of age to vote in presidential and state primary elections, violated Part I, Article 11 of the State Constitution. *Id.* In *Voting Age I*, we observed that although those submitting memoranda addressed the issue, we had not been asked and therefore would not opine upon whether the proposed legislation infringed upon the associational rights of political parties guaranteed by the First Amendment to the United States Constitution. *Id.*

In the instant matter, we have been asked to give our opinion upon three questions that are related to the issue we left open in *Voting Age I*: (1) whether enactment of SB 21 would "infringe upon the associational rights guaranteed to political parties under the First and Fourteenth Amendments to the United States Constitution"; (2) whether Part I, Article 11 and Part I, Article 32 of the New Hampshire Constitution provide less protection to the associational rights of political parties than do the First and Fourteenth Amendments to the United States Constitution; and (3) if the answer to the second question is "yes," would SB 21 be constitutional notwithstanding our opinion in *Voting Age I*.

In discussing these questions, the President of the New Hampshire Senate argues that Part I, Article 11 of the New Hampshire Constitution, as we interpreted it in *Voting Age I*, impermissibly burdens the right of association guaranteed to political parties by the Federal Constitution to the extent that it precludes an otherwise qualified seventeen-year-old voter from voting in a state or presidential primary, and, therefore, Part I, Article 11 must yield to this federal constitutional right.

Based, in part, upon her submission, we have reframed the questions as follows: (1) whether Part I, Article 11 of the State Constitution, as we interpreted it in *Voting Age I*, conflicts with the associational rights guaranteed to political parties by Part I, Article 32 of the State Constitution and the First and Fourteenth Amendments to the Federal Constitution in that it precludes the State from allowing political parties to invite unqualified voters to vote in primary elections; and (2) whether Part I, Article 32 of the State Constitution is less protective of the associational rights of political parties than are the First and Fourteenth Amendments to the Federal Constitution such that, under the Supremacy Clause, the First and Fourteenth Amendments take precedence. We answer both questions in the negative.

We first address the protection available to the associational rights of political parties under Part I, Article 32 of the State Constitution. Part I, Article 32 of the State Constitution provides: "The people have a right, in an orderly and peaceable manner, to assemble and consult upon the common good, give instructions to their representatives, and to request of the legislative body, by way of petition or remonstrance, redress of the wrongs done them, and of the grievances they suffer." This provision "guarantees the same right to free speech and association" as does the First Amendment to the Federal Constitution. *Opinion of the Justices*, 121 N.H. 434, 437 (1981). In interpreting Part I, Article 32, therefore, we rely upon federal cases interpreting the First Amendment to the Federal Constitution for guidance. *See Associated Press v. State of N.H.*, 153 N.H. 120, 140 (2005).

■ Part I, Article 32, like the First Amendment to the Federal Constitution, "protects the right of citizens to associate and to form political parties for the advancement of common political goals and ideas." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 357 (1997). "Freedom of association means not only that an individual voter has the right to associate with the political party of her choice, but also that a political party has a right to identify the people who constitute the association and to select a standard bearer who best represents the party's ideologies and preferences." *Eu v. San Francisco Democratic Comm.*, 489 U.S. 214, 224 (1989) (citations and quotation omitted). "As a result, political parties' government, structure, and activities enjoy constitutional protection," which includes the party's discretion in how to organize itself, conduct its affairs and select its leaders. *Timmons*, 520 U.S. at 358.

■ The right to associate for political purposes, however, is not absolute. *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). "States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons*, 520 U.S. at 358. "As a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Burdick*, 504 U.S. at 433 (quotation omitted). Article I, Section 4, Clause 1 of the Federal Constitution grants States broad power to regulate the time, place, and manner of state and federal elections. *Akins v. Sec'y of State*, 154 N.H. 67, 71-72 (2006); *see Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 217 (1986).

■ Because of these competing constitutional concerns, "[w]hen deciding whether a state election law violates . . . associational rights, we weigh the

character and magnitude of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary." *Timmons,* 520 U.S. at 358 (quotations omitted); *see Clingman v. Beaver,* 544 U.S. 581, 586-87 (2005). "Under this standard, the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burden[s]" constitutionally protected associational rights. *Burdick,* 504 U.S. at 434; *see Akins,* 154 N.H. at 72. "[W]hen those rights are subjected to 'severe' restrictions," the election law at issue must be "narrowly drawn to advance a state interest of compelling importance." *Burdick,* 504 U.S. at 434 (quotation omitted); *see Akins,* 154 N.H. at 72. But "[w]hen a state electoral provision places no heavy burden on associational rights, a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Clingman,* 544 U.S. at 593 (quotation omitted); *see Akins,* 154 N.H. at 72.

Proponents of SB 21's constitutionality argue that allowing seventeen-year-olds to vote in political primaries would constitute an exercise of a political party's constitutional right to determine its own structure and to select a standard bearer. *See Tashjian,* 479 U.S. at 224; *Eu,* 489 U.S. at 224. They contend that we must apply strict scrutiny because "[a] [political] party's freedom of association would be severely burdened by a state law prohibiting its ability to lower the age at which its members can vote in its primary." We disagree.

■ Although a political party has the constitutionally-protected right to select its own structure and standard bearer, it does not follow that it also has the right to determine voter qualifications. *See Tashjian,* 479 U.S. at 224; *Eu,* 489 U.S. at 224. A party is not absolutely entitled to allow anyone it wants to vote in its primary. *Cf. Timmons,* 520 U.S. at 359.

■ In *Timmons,* for instance, the Court ruled that although an independent political party has the right to select its own candidate, it was not absolutely entitled to have its nominee appear on the ballot as the party's candidate. *Id.* Such a nominee may be ineligible for office, for instance, and in such a case cannot appear on the ballot. *See id.* The Court concluded that, under these circumstances, precluding the party's nominee from appearing on the ballot did not severely burden the party's associational rights. *Id.* As the Court explained in *Burdick,* 504 U.S. at 440 n.10, "limiting the choice of candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable."

■ It is likewise eminently reasonable to restrict voters to those who meet the qualifications set forth in Part I, Article 11. Any burden on a political party's freedom of association is limited. We give little weight to the interest that a political party may have in associating with unqualified voters. *Cf. Storer v. Brown*, 415 U.S. 724, 736 (1974) (giving little weight to the interest "the candidate and his supporters may have in making a late rather than an early decision to seek independent ballot status").

In arguing that we should apply strict scrutiny, the proponents of SB 21's constitutionality mistakenly rely upon *Eu*. This case is inapposite as it involved "regulation of political parties' internal affairs." *Timmons*, 520 U.S. at 360. In *Eu*, the election laws at issue required political parties to establish their official governing bodies at the county level, imposed term limits for the chair of the party's state central committee, and required the chair to rotate between residents of northern and southern California. *Eu*, 489 U.S. at 229, 230. These restrictions, the Court ruled, directly limited a political party's discretion in how to organize itself, conduct its own affairs and select its leaders. *Id.* at 230-31.

■ By contrast, Part I, Article 11 is "silent on parties' internal structure, governance, and policymaking." *Timmons*, 520 U.S. at 363. Part I, Article 11 merely reduces the universe of potential voters to those who meet a minimum age requirement. As we concluded previously, whatever burden this may impose upon a political party's associational rights is limited.

More to the point is the proponents' reliance upon *Tashjian*. In *Tashjian*, the law at issue required voters in a party primary to be registered party members. *Tashjian*, 479 U.S. at 210-11. This law, the Court ruled, interfered with a party's associational rights by limiting "the group of registered voters whom the Party may invite to participate in the basic function of selecting the Party's candidates." *Id.* at 215-16 (quotation omitted).

While *Tashjian* involved a political party's "core associational activities," Part I, Article 11 does not. *Timmons*, 520 U.S. at 360. Part I, Article 11, which applies to major and minor parties alike, simply precludes the State from allowing political parties to invite unqualified voters to vote in the primary. While a political party may have a compelling interest in associating with *registered* voters, its interest in associating with *unqualified* voters is dubious at best.

In any event, neither *Eu* nor *Tashjian* support the proponents' argument that strict scrutiny applies to the instant matter. In both cases, the Court "applied strict scrutiny with little discussion of the magnitude of the burdens imposed" by the practices at issue upon the parties' associational rights. *Clingman*, 544 U.S. at 591-92. "But not every electoral law that burdens associational rights is subject to strict scrutiny. Instead, as . . .

cases since *Tashjian* [and *Eu*] have clarified, strict scrutiny is appropriate only if the burden is severe." *Id.* at 592.

■ We agree with Justice Stewart's analysis in *Oregon v. Mitchell*, 400 U.S. 112, 294-95 (1970), that it would be futile to use strict scrutiny to analyze an age qualification for voting. As he observed: "[T]o test the power to establish an age qualification by the 'compelling interest' standard is really to deny a State any choice at all, because no State could demonstrate a 'compelling interest' in drawing the line with respect to age at one point rather than another." *Mitchell*, 400 U.S. at 294 (Stewart, J., concurring in part and dissenting in part). Rather, the power to establish an age requirement necessarily involves the power to choose a reasonable one. *Id.* at 294-95 (Stewart, J., concurring in part and dissenting in part); *see Gaunt v. Brown*, 341 F. Supp. 1187, 1188-89, 1192 (S.D. Ohio) (applying reasonableness as test to equal protection challenge to State law precluding individuals under eighteen from voting), *aff'd*, 409 U.S. 809 (1972). "There is no single specific day in the life of all citizens in which it can rationally be said that they are suddenly informed members of the electorate though they were not so one day before. It is a problem in drawing lines and . . . the clear meaning . . . of the Constitution is that these lines are for the states to draw." Letter from Professor Charles A. Wright to President Richard M. Nixon, April 20, 1970, *in* 116 CONG. REC. 20167 (June 17, 1970).

We, therefore, do not review whether Part I, Article 11, as interpreted in *Voting Age I*, is narrowly tailored to serve compelling state interests, but instead review only whether the State's asserted regulatory interests are sufficiently weighty to justify the minimal limitation imposed upon the associational rights of political parties. *See Timmons*, 520 U.S. at 358.

■ "States certainly have an interest in protecting the integrity, fairness, and efficiency of their ballots and election processes as means for electing public officials." *Id.* at 364. "A State indisputably [also] has a compelling interest in preserving the integrity of its election process." *Eu*, 489 U.S. at 231. Additionally, the State has a legitimate interest in an informed electorate, *id.* at 228, and in assuring that those who vote are sufficiently mature to exercise their right to vote meaningfully. *See Meyers v. Roberts*, 246 N.W.2d 186, 188 (Minn. 1976) (discussing State's interest in assuring maturity of those holding public office), *appeal dismissed by* 429 U.S. 1083 (1977); *Wurtzel v. Falcey*, 354 A.2d 617, 618 (N.J. 1976) (holding that state constitution's provision regarding minimum age requirements for certain elective offices did not violate equal protection of underage plaintiffs; such classification is expressive of State's legitimate interest in integrity of ballot by ensuring competent candidates).

Towards these ends, "a State may impose certain eligibility requirements for voters . . . , even though they limit a political party's ability to garner support and members." *Eu*, 489 U.S. at 231. "Residence requirements [and] age . . . are obvious examples indicating factors which a State may take into consideration in determining the qualifications of voters." *Lassiter v. Northampton Elections Bd.*, 360 U.S. 45, 51 (1959); *see Eu*, 489 U.S. at 231 (State may impose age minimum for voters). The State's interest in establishing an age qualification for voters is "unimpeachable." *Mitchell*, 400 U.S. at 294 (Stewart, J., concurring in part and dissenting in part); *see Raza Unida Party v. Bullock*, 349 F. Supp. 1272, 1283 (W.D. Tex. 1972), *aff'd in part and vacated in part on other grounds sub nom. American Party of Texas v. White*, 415 U.S. 767 (1974); *Gaunt*, 341 F. Supp. at 1190, 1192.

We believe that these valid state interests justify whatever burdens Part I, Article 11 of the State Constitution imposes upon the associational rights of political parties. Accordingly, we conclude that Part I, Article 11, as interpreted in *Voting Age I*, does not conflict with or violate the associational rights of political parties guaranteed by Part I, Article 32 of the State Constitution. Consistent with Part I, Article 32, political parties may be precluded from inviting unqualified voters to vote in primary elections.

Because Part I, Article 32 provides at least as much protection to the associational rights of political parties as do the First and Fourteenth Amendments to the Federal Constitution, *see Opinion of the Justices*, 121 N.H. at 437, we necessarily reach the same conclusion under both constitutions. In light of this, we find no conflict between Part I, Article 32 of the State Constitution and the First and Fourteenth Amendments to the Federal Constitution and no need to yield to the Federal Constitution under the Supremacy Clause. *See* U.S. CONST. art. VI, cl. 2; *see also Koor Communication v. City of Lebanon*, 148 N.H. 618, 620 (2002).

JOHN T. BRODERICK, JR.

LINDA STEWART DALIANIS

JAMES E. DUGGAN

GARY E. HICKS