NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2020-0518


ANNA CARRIGAN

v.

NEW HAMPSHIRE DEPARTMENT OF HEALTH AND HUMAN SERVICES & a.

Argued: May 5, 2021
Opinion Issued: July 20, 2021


Rath, Young and Pignatelli, P.C., of Concord (Michael S. Lewis on the brief and orally), for the plaintiff.

Office of the Attorney General, (Samuel R.V. Garland and Jennifer S. Ramsey, assistant attorneys general, on the brief, and Mr. Garland orally), for the defendants.

DONOVAN, J.  The plaintiff, Anna Carrigan, filed suit against the defendants, the New Hampshire Department of Health and Human Services and the Department's commissioner, alleging that they are failing to meet their statutory and constitutional duties as a result of their "irresponsible" spending decisions.[1]  She asserted standing under Part I, Article 8 of the New Hampshire

_____

[1] Alleging violations of various statutory and constitutional provisions, the plaintiff also sued other individual defendants, in their official capacities as employees of the Department, who, she asserted, retaliated against her for publicly complaining about the Department's alleged

Constitution, which provides New Hampshire taxpayers who are eligible to vote with standing to seek a declaration that the State or a local government "has spent, or has approved spending, public funds" in violation of the law.  N.H. CONST. pt. I, art. 8.  The Superior Court (Schulman, J.) granted the defendants' motion to dismiss for want of standing, and the plaintiff appeals. We affirm because the plaintiff fails to challenge any specific spending action or spending approval, by the Department, as necessary to maintain standing under Part I, Article 8.

### I. Facts

The following facts are drawn from the plaintiff's complaint.  The plaintiff is a taxpaying resident of Farmington, an eligible New Hampshire voter, and Department employee.  In February 2020, she filed a complaint against the defendants alleging, in essence, "that the State has failed to abide by its mandatory, substantive, and procedural obligations to respond to and protect children who are subject to . . . child abuse and neglect."  She seeks a ruling that the Department's "response to the child abuse and neglect crisis is illegal and unconstitutional."  According to the plaintiff, the Department has a backlog of thousands of abuse and neglect cases, the State's child welfare agency is understaffed, and its existing staff is undertrained.

Her complaint ties these, and other, alleged shortcomings to the Department's "poor allocation of resources, . . . which relate to a series of spending decisions [the Department] has made and continues to make" and its "unconstitutional budgetary decision-making in the face of uncontroverted evidence regarding the connection between the absence of resources and the inability of New Hampshire to abide by its mandated legal obligations."  She further alleged that the Department has not: "invested sufficient resources to address its documented shortfalls in regard to child protective services"; "funded the agencies with responsibility for abiding by the legal requirements enacted by the legislature at levels that facilitate legal functioning"; or "spent substantial sums of state allocated funds available to address the needs of abused and neglected children, though such funds are available."  In light of these allegations, the plaintiff sought a declaration to the effect that the defendants, as a "product" or "result" of their spending policies, are failing to comply with various child welfare statutory provisions and are violating the constitutional rights of abused and neglected children.

The defendants moved to dismiss the complaint for lack of standing, asserting that, to have standing under Part I, Article 8, the plaintiff must challenge "the lawfulness of a particular, identifiable expenditure or the approval of a particular, identifiable expenditure."  (Emphases omitted.)

---

shortcomings.  These claims were dismissed with prejudice by agreement of the parties and are not before us.

2

Because the plaintiff merely challenged the defendants' failure to spend public money in the manner she believes is required, the defendants argued that she lacked standing under Part I, Article 8.

The trial court agreed with the defendants, concluding that "[n]othing in the text of Article 8 suggests that it grants every taxpayer the right to seek a judicial determination of whether the government has sufficiently funded the programs that it runs." Accordingly, the trial court dismissed the plaintiff's complaint. This appeal followed.

## II. Standard of Review

When a motion to dismiss does not contest the sufficiency of the plaintiff's claim, but instead challenges the plaintiff's standing to sue, the trial court must look beyond the allegations and determine, based upon the facts alleged, whether the plaintiff has demonstrated a right to claim relief. See Avery v. N.H. Dep't of Educ., 162 N.H. 604, 606-07 (2011). When the relevant facts are not in dispute — here, that the plaintiff is a New Hampshire taxpayer and eligible voter — we review the trial court's standing determination de novo. See id. at 607.

## III. Discussion

The doctrine of standing "limits the judicial role, consistent with a system of separated powers, to addressing those matters that are traditionally thought to be capable of resolution through the judicial process." Duncan v. State, 166 N.H. 630, 643 (2014) (quotation omitted); see Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157 (2014). In New Hampshire, standing in the traditional sense is grounded in Part II, Article 74 of the State Constitution, which provides: "Each branch of the legislature as well as the governor and council shall have authority to require the opinions of the justices of the supreme court upon important questions of law and upon solemn occasions." N.H. CONST. pt. II, art. 74; see Duncan, 166 N.H. at 642-43. Thus, while the respective branches of the legislature, the governor, and the executive council may request our advisory opinion on important questions of law, other parties may not. See Duncan, 166 N.H. at 640; Piper v. Meredith, 109 N.H. 328, 330 (1969). Rather, we have held that those other parties must present claims for judicial resolution through an adversarial process in which their actual interests are at stake. See Teeboom v. City of Nashua, 172 N.H. 301, 307 (2019); Duncan, 166 N.H. at 642-43.

In a typical case, determining whether a party has standing to sue requires that we focus on whether the party has alleged a legal injury against which the law was designed to protect. See Teeboom, 172 N.H. at 307. A party must allege a concrete, personal injury, implicating legal or equitable rights, with regard to an actual, not hypothetical, dispute, which is capable of judicial

3

redress by a favorable decision.  See id. at 307, 309; Duncan, 166 N.H. at 642-43.  Requiring that a party claim a personal injury to a legal or equitable right "capable of being redressed by the court tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action."  Duncan, 166 N.H. at 643, 647-48 (quotation omitted).

This is not, however, a typical case for standing purposes; it involves a unique type of standing, the history of which we briefly recount.  Prior to our decision in Baer v. New Hampshire Department of Education, we had decided two conflicting lines of cases determining whether certain plaintiffs, who did not allege a personal injury in the traditional sense, had standing based upon their status as taxpayers, a doctrine known as taxpayer standing.  See Baer v. N.H. Dep't of Educ., 160 N.H. 727, 730 (2010), superseded by statute as stated in Duncan, 166 N.H. at 638.  Under the earlier line of cases, taxpayers could bring a declaratory judgment action — which allows parties to establish their rights or question the validity of a law — to seek "redress for the unlawful acts of their public officials."  Id.  In those cases, taxpayers had standing because we "reasoned that every taxpayer has a vital interest in and a right to the preservation of an orderly and lawful government regardless of whether his purse is immediately touched."  Id. (quotation omitted).

In tension with the first line of cases, the second, more recent line of cases, "required taxpayers to demonstrate that their rights are impaired or prejudiced in order to maintain a declaratory judgment action."  Id.  In Baer, we concluded that "our more recent analysis of taxpayer standing [was] more consistent with the language of RSA 491:22," our declaratory judgment statute.  Id.; see RSA 491:22 (Supp. 2020).  Under this standard, a party was required to allege the impairment or prejudice of a present legal or equitable right which was personal to the party; a party's mere status as a taxpayer was insufficient to confer standing.  See Baer, 160 N.H. at 730-31.  Our prior cases concluding otherwise were, therefore, overruled.  Id. at 731.

The legislature responded to Baer by amending RSA 491:22 to provide taxpayer standing to petitioners seeking declaratory judgment "when it is alleged that the taxing district . . . has engaged, or proposes to engage, in conduct that is unlawful or unauthorized, and in such a case the taxpayer shall not have to demonstrate that his or her personal rights were impaired or prejudiced."  Duncan, 166 N.H. at 637-38 (quotation and emphasis omitted).  In Duncan, we analyzed the constitutionality of RSA 491:22 as amended.  Id. at 643-45.  We explained that "[t]he standing required by our constitution is not satisfied by the abstract interest in ensuring that the State Constitution is observed."  Id. at 643.  By allowing parties to bring declaratory judgment actions without having to claim a concrete, personal injury, the amended statute permitted courts "to render to private individuals advisory opinions,

4

outside the context of concrete, fully-developed factual situations." Id. at 644 (quotation omitted). "In doing so," we concluded, RSA 491:22, I, as amended was unconstitutional because it "violates Part II, Article 74." Id.

In 2018, New Hampshire voters adopted an amendment to Part I, Article 8 of the New Hampshire Constitution. See 5 Gordon J. MacDonald, New Hampshire Practice: Wiebusch on New Hampshire Civil Practice and Procedure § 36.06, at 11 (4th ed. 2020 Supp.); see also N.H. CONST. pt. 2, art. 100 (establishing the methods by which the constitution may be amended). According to testimony before the Senate Rules and Enrolled Bills Committee from Representative Berch, who co-sponsored the House Bill which ultimately led to the amendment being put to the voters, the amendment was intended to return taxpayer standing in New Hampshire to its status prior to our decisions in Baer and Duncan. See Senate Rules and Enrolled Bills Committee Hearing on CACR 15, at 1-2 (Mar. 29, 2018) (Remarks of Rep. Berch).[2] As amended, Part I, Article 8 provides:

> All power residing originally in, and being derived from, the people, all the magistrates and officers of government are their substitutes and agents, and at all times accountable to them. Government, therefore, should be open, accessible, accountable and responsive. To that end, the public's right of access to governmental proceedings and records shall not be unreasonably restricted. The public also has a right to an orderly, lawful, and accountable government. Therefore, any individual taxpayer eligible to vote in the State shall have standing to petition the Superior Court to declare whether the State or political subdivision in which the taxpayer resides has spent, or has approved spending, public funds in violation of a law, ordinance, or constitutional provision. In such a case, the taxpayer shall not have to demonstrate that his or her personal rights were impaired or prejudiced beyond his or her status as a taxpayer. However, this right shall not apply when the challenged governmental action is the subject of a judicial or administrative decision from which there is a right of appeal by statute or otherwise by the parties to that proceeding.

N.H. CONST. pt. I, art. 8.

Determining whether the plaintiff has standing requires us to interpret Part I, Article 8. We review the trial court's interpretation of the constitution de

---

[2] Available at
http://www.gencourt.state.nh.us/bill_status/HearingReport.aspx?id=15052&sy=2018.

novo.  Bd. of Trustees, N.H. Judicial Ret. Plan v. Sec'y of State, 161 N.H. 49, 53 (2010).  When interpreting a provision of the constitution, we look to its purpose and intent.  Duncan, 166 N.H. at 640.  "The language used by the people in the great paramount law which controls the legislature as well as the people, is to be always understood and explained in that sense in which it was used at the time when the constitution and the laws were adopted."  Petition of Below, 151 N.H. 135, 139 (2004) (quotation and ellipsis omitted).  Accordingly, we give the words in question the meaning they must be presumed to have had to the electorate when the vote to adopt them was cast.  Bd. of Trustees, 161 N.H. at 53.  The simplest and most obvious interpretation of the constitution, if sensible, is most likely that meant by the people in its adoption.  Duncan, 166 N.H. at 640.  Furthermore, the constitution as it now stands is to be considered as a whole, as if each provision were enacted at one time.  Bd. of Trustees, 161 N.H. at 53-54; see Thompson v. Kidder, 74 N.H. 89, 91 (1906) ("The whole is to be considered, and the true meaning to be drawn from the consideration of every part.").

Part I, Article 8 identifies the type of party who may invoke it to present his or her complaint to a court: "any individual taxpayer eligible to vote in the State," who need not "demonstrate that his or her personal rights were impaired or prejudiced beyond his or her status as a taxpayer."  N.H. CONST. pt. I, art. 8.  The article also provides that a party may request a court to adjudicate "whether the State or political subdivision in which the taxpayer resides has spent, or has approved spending, public funds in violation of a law, ordinance, or constitutional provision," unless "the challenged governmental action is the subject of a judicial or administrative decision from which there is a right of appeal."  Id.  In this case, the question of the plaintiff's standing turns on the scope of the issues that Part I, Article 8 permits courts to adjudicate: whether the plaintiff alleged that the State "has spent, or has approved spending, public funds in violation of" the law.  Id.

The simplest, most obvious reading of the phrase "has spent, or has approved spending" is that it refers to a specific governmental spending action or approval of spending.  Id.; see Duncan, 166 N.H. at 640.  That is, a plaintiff with standing under Part I, Article 8 can call on the courts to determine whether a specific act or approval of spending conforms with the law.  This interpretation of the phrase "has spent, or has approved spending" is confirmed by the final sentence of the provision, which provides that the right to standing created by Part I, Article 8 "shall not apply when the challenged governmental action is the subject of a judicial or administrative decision from which there is a right of appeal."  N.H. CONST. pt. I, art. 8 (emphasis added).  When Part I, Article 8 is read as a whole, the phrase "has spent, or has approved spending" must be understood as referencing a specific category of "governmental action."

We cannot conclude that the people, in adopting the amendment to Part I, Article 8, would have understood "governmental action" to mean a governmental body's comprehensive response to a complex issue, such as child welfare, which encompasses many decisions to spend or approve spending, as well as decisions not to spend or approve spending. Accordingly, the people would not have understood the phrase "has spent, or has approved spending" to mean a governmental body's overall management of its operations and functions, including its allocation of appropriations, as opposed to one or more discrete acts or decisions approving certain spending. Part I, Article 8, therefore, does not provide the judiciary with the authority to, as the plaintiff requests, decide whether the State or a local government has "invested sufficient resources to address" alleged shortcomings or has properly "funded the agencies with responsibility for abiding by the legal requirements enacted by the legislature at levels that facilitate legal functioning."

The plaintiff argues that "a lawsuit alleg[ing] that the State 'has not spent enough[]' . . . remains a lawsuit about spending." Part I, Article 8, however, does not state that a plaintiff has standing to bring a declaratory judgment action "about spending." The provision's language applies to a specific "governmental action," and does not empower courts to audit a governmental body to determine whether its policy decisions regarding the allocation of resources are prudent or sufficient to comply with legal requirements. N.H. CONST. pt. I, art. 8. As the New York Court of Appeals observed when it interpreted New York's taxpayer standing statute, which allows taxpayers to challenge "a wrongful expenditure, misappropriation, misapplication, or any other illegal or unconstitutional disbursement of state funds," N.Y. State Fin. Law § 123-b (McKinney 2021), "a claim that state funds are not being spent wisely is patently insufficient to" confer standing. Saratoga County Chamber/Commerce v. Pataki, 798 N.E.2d 1047, 1053 (N.Y. 2003).

The plaintiff also argues that in New Hampshire Health Care Association v. Governor, 161 N.H. 378 (2011), we "defined the constitutional power to spend, broadly, to include government spending at lesser, rather than greater, amounts." New Hampshire Health Care, however, involved a challenge to a specific governmental action and addressed the executive branch's discretion, under Part II, Article 56 of the New Hampshire Constitution, to spend less money than appropriated by the legislature to accomplish legislative objectives. Id. at 382, 389-90. There, we did not decide the scope of a challenge a plaintiff may bring when she alleges that a governmental body "has spent, or has approved spending" in violation of the law under Part I, Article 8.

Our conclusion that Part I, Article 8 confers standing upon a plaintiff who challenges a particular governmental spending action is consistent with our pre-Baer decisions in which we determined that taxpayers had standing, in the absence of an allegation that their personal rights were impaired or prejudiced, to challenge various governmental actions. That line of cases

7

involved challenges to the legality of specific governmental actions. For example, in Blood v. Electric Company, 68 N.H. 340, 340-41 (1895), taxpayers brought suit in equity to challenge a city council's decision to enter into a streetlight operating contract for a term of ten years. Similarly, in Sherburne v. Portsmouth, 72 N.H. 539, 540, 543-44 (1904), taxpayers challenged a city's decision to build a baseball park on a common area with city funds. Clapp v. Jaffrey, 97 N.H. 456, 458-61 (1952), addressed claims by taxpayers who brought an action to determine whether a town could lawfully rent equipment to, or perform services for, private individuals on their private properties. And in Green v. Shaw, 114 N.H. 289, 290-91 (1974), taxpayers alleged that city officials had illegally expended money for various specific expenses, such as purchasing a truck and police cruiser, and had illegally drawn from the city's revenue surplus account without city council approval.

In each of these cases, and others in which we similarly allowed plaintiffs to bring claims based, in part, upon their status as taxpayers, the plaintiffs alleged that specific governmental actions were illegal. See Austin v. State Tax Comm'n, 114 N.H. 137, 138-39 (1974) (Maine residents paying taxes on income earned in New Hampshire had standing to challenge the constitutionality of New Hampshire's Commuters Income Tax), rev'd on other grounds sub nom. Austin v. New Hampshire, 420 U.S. 656 (1975); N. H. &c. Beverage Ass'n v. Commission, 100 N.H. 5, 6-7 (1955) (association of taxpayers holding liquor permits had standing to challenge the Liquor Commission's policy regarding the issuance of liquor licenses to corporations owned by other individuals holding liquor permits). In none of these cases did the parties, as the plaintiff does here, allege that a governmental body's policy decisions regarding its allocation of appropriations were imprudent or insufficient, thereby resulting in illegal or unconstitutional conduct.

In addition to being consistent with the pre-Baer cases discussed above, our conclusion that a plaintiff relying upon Part I, Article 8 to establish standing must challenge a specific governmental action is also consonant with the decisions of other state courts examining their state's taxpayer standing doctrine. The Missouri Supreme Court, for example, has held that to have taxpayer standing the plaintiff, among other things, "must be able to demonstrate a direct expenditure of funds." E. Mo. Laborers D. Coun. v. St. Louis Cty., 781 S.W.2d 43, 47 (Mo. 1989) (emphasis added); see LeBeau v. Commissioners of Franklin County, 422 S.W.3d 284, 286-87, 290 (Mo. 2014) (Missouri taxpayers had standing to challenge the constitutionality of a specific legislative act). In Colorado, taxpayers have been held to have standing when they challenged specific governmental expenditures, such as a transfer of money between particular government funds and the public financing of nontherapeutic abortions. See Reeves-Toney v. School Dist No. 1 Denver, 442 P.3d 81, 86 (Colo. 2019) (collecting cases). And, in North Carolina, taxpayers have standing to challenge discrete governmental actions, such as an alleged illegal appointment and payment of justices of the peace and the unlawful

expenditure of public funds to build a museum.  See Goldston v. State, 637 S.E.2d 876, 879-81 (N.C. 2006) (collecting cases).[3]  The unifying theme, as it relates to standing, running through these cases is that taxpayers have standing to challenge specific governmental actions, not to launch broad polemics on governmental bodies' general spending policies.

Furthermore, our reading of Part I, Article 8 is informed by the principle that we interpret the constitution as a whole, as it now stands, and as if enacted at one time.  See Thompson, 74 N.H. at 91.  A corollary of this principle is that we must construe constitutional provisions so as to avoid conflict with one another.  See id.; see also Opinion of the Justices (Voting Age in Primary Elections II), 158 N.H. 661, 671 (2009).  Concluding that a plaintiff has standing to challenge the overall spending policies of one of our coequal branches of government would conflict with at least three other constitutional provisions: Part I, Article 37, Part II, Article 72-a, and Part II, Article 74.

Part II, Article 72-a vests the courts with "judicial power."  Part II, Article 74, "in practical effect, limits the judicial role, consistent with a system of separated powers, to addressing those matters that are traditionally thought to be capable of resolution through the judicial process."  Duncan, 166 N.H. at 640, 643 (quotation omitted).  The task that the plaintiff asks the courts to undertake — determining whether the Department's "response to the child abuse and neglect crisis is illegal and unconstitutional" — would take the courts beyond the judicial power by having them assess the manner by which the Department is allocating its legislative appropriations, rather than having them issue an authoritative adjudication of whether any specific act or approval of spending is illegal.  Cf. id. at 642-43.

"[I]t is one thing to have standing to correct clear illegality of official action and quite another to have standing in order to interpose litigating plaintiffs and the courts into the management and operation of public enterprises."  Pataki, 798 N.E.2d at 1053 (quotation omitted).  Courts are ill-equipped to wade into policy debates as to whether governmental bodies are sufficiently funded or whether appropriated funds are being wisely spent to meet an agency's objectives.  See State v. Express Co., 60 N.H. 219, 234 (1880) (Stanley, J.) ("[W]e recognize the doctrine, so often expressed, that we have nothing to do with the propriety, expediency, or policy of any law . . . .");  see also Parents Against Realignment v. GHSA, 516 S.E.2d 528, 529 (Ga. 1999)

---

[3] This survey of cases requiring taxpayer plaintiffs to challenge a specific governmental action is not exhaustive.  See, e.g., Horner v. Curry, 125 N.E.3d 584, 587, 596 (Ind. 2019) (Indiana taxpayers had standing to challenge the constitutionality of a specific civil forfeiture scheme); Pataki, 798 N.E.2d at 1050, 1053-54 (New York taxpayers had standing to challenge particular gambling laws and the expenditure of state funds in furtherance of those laws); North Broward Hosp. Dist. v. Fornes, 476 So. 2d 154, 155-56 (Fla. 1985) (recognizing that Florida's taxpayer standing doctrine allows taxpayers to challenge the constitutionality of specific government appropriations).

(explaining that courts are improper forums in which to resolve "discretionary policy determinations" (quotation omitted)).  Thus, although taxpayer standing is specifically conferred by our constitution, we do not read Part I, Article 8 to confer standing on a plaintiff who challenges governmental spending policies.

We are also aware of the conflict that ruling in favor of the plaintiff's standing would present with Part I, Article 37, which espouses the constitutional principle of separation of powers.  See Baines v. N.H. Senate President, 152 N.H. 124, 128 (2005).  "The justiciability doctrine prevents judicial violation of the separation of powers by limiting judicial review of certain matters that lie within the province of the other two branches of government."  Burt v. Speaker, N.H. House of Representatives, 173 N.H. 522, 525 (2020) (quotation omitted).  A controversy is nonjusticiable when, among other possibilities, it presents "a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government."  Baker v. Carr, 369 U.S. 186, 217 (1962); see Burt, 173 N.H. at 525.  Calling upon the judiciary to adjudicate, as the plaintiff requests, a challenge to the prudence of the State's overall approach to child welfare implicates each concern discussed above.

Analyzing the legality of a discrete governmental action and determining the remedy, if the action is illegal, is quotidian, though often difficult, business for the judiciary.  Scrutinizing the entire realm of a governmental body's spending activity, on the other hand, to determine what aspects of its spending decisions, if any, are causing injury exceeds the bounds of our role and infringes on executive or legislative prerogatives.  See Express Co., 60 N.H. at 234 ("[O]ur sole duty, when the validity of any statute is challenged, is to ascertain and declare whether it conflicts with the constitution as the paramount law, leaving all other considerations with the legislature and people, where they of right belong."); see also Peavler v. Monroe Cty. Bd. of Com'rs, 528 N.E.2d 40, 44 (Ind. 1988) ("The separation of powers doctrine forecloses the courts from reviewing political, social and economic actions within the province of coordinate branches of government.").

In short, the authority to determine how public funds are generally appropriated and spent rests, respectively, with the legislative and executive branches.  See New Hampshire Health Care, 161 N.H. at 386-87 (discussing the legislative branch's authority to appropriate funds and the executive branch's authority to expend funds).  Although we may determine whether any particular act or approval of spending is lawful, we cannot provide advice to our coequal branches of government regarding the prudence of their spending decisions.  Cf. id. at 385-400 (determining whether a specific legislative enactment and executive order were constitutional).

10

We acknowledge that the plaintiff's complaint references several specific instances of spending related to the Department. However, we do not read her complaint as challenging the legality of any specific acts of Departmental spending. She does not seek a declaration that any of the specific expenditures identified in her complaint was illegal; rather she requests a declaration that, as a "product" or "result" of the Department's spending policies, the defendants are failing to meet legal obligations. Because she does not challenge the legality of any discrete act or approval of spending by the defendants, she does not have standing under Part I, Article 8.

## IV. Conclusion

For the reasons stated above, we affirm the trial court's grant of the defendants' motion to dismiss.

<u>Affirmed</u>.


HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.