Hillsborough-southern judicial district
No. 94-093

## NASHUA SCHOOL DISTRICT

v.

## THE STATE OF NEW HAMPSHIRE

November 28, 1995

*Judy T. Constantian*, deputy corporation counsel, of Nashua, by brief and orally, for the plaintiff.

*Jeffrey R. Howard,* attorney general (*Nancy J. Smith,* assistant attorney general, on the brief and orally), for the State.

HORTON, J. The plaintiff, Nashua School District, appeals the dismissal of its declaratory judgment action by the Superior Court (*Hampsey,* J.) regarding responsibility for certain special education costs. We affirm.

In October 1992, the plaintiff filed a declaratory judgment action against the State, acting by and through its agencies, the division for children, youth, and families, the division of mental health and development services, and the department of education. At issue are the plaintiff's requests regarding the scope of its responsibility: (1) for the special education costs of students placed by the district or probate courts in "residential schools" as defined by RSA 193:27, I (Supp. 1994); and (2) to enter the State prison to perform evaluations, develop individualized education plans, and to hold staffings for incarcerated special education students between the ages of eighteen and twenty-one, *see* RSA 186-C:19-a, I & II (Supp. 1994). The trial court disagreed with the plaintiff's position and dismissed the petition. The school district's motion for reconsideration of the incarcerated special education students issue was denied as untimely. On appeal, the plaintiff argues that the trial court erred in ruling that: (1) a 1985 amendment to RSA 193:27, I, adding "residential school" to the definition of "home for children," did not create an unfunded mandate in violation of part I, article 28-a of the New Hampshire Constitution; and (2) RSA 186-C:2, I (Supp. 1994) and RSA 186-C:19-a, II require school districts to perform evaluations, develop individualized education plans, and hold staffings for incarcerated special education students between the ages of eighteen and twenty-one.

This case requires us to examine the "tangled interrelationship of New Hampshire's juvenile justice system and special education laws," *In re Todd P.,* 127 N.H. 792, 794, 509 A.2d 140, 141 (1986), as they pertain to the financial liability of school districts for the special education provided to certain educationally disabled children. Our analysis must start with consideration of the plain meaning of the relevant statutes, *Gilmore v. Bradstreet Assoc., Inc.,* 135 N.H. 234, 237, 604 A.2d 555, 556 (1992), construing them, where reasonably possible, to effectuate their underlying policies, *Swiezynski v. Civiello,* 126 N.H. 142, 148, 489 A.2d 634, 639 (1985). Insofar as reasonably possible, we will construe the various statutory provisions harmoniously. *Id.*

We begin with the plaintiff's argument that the trial court erred in ruling that the 1985 amendment to RSA 193:27, I, did not create

an unfunded mandate in violation of part I, article 28-a. The trial court found that the special education costs of students placed by the courts in "residential schools" had been paid by school districts prior to 1985. The court therefore concluded that the 1985 amendment does not transgress article 28-a because "school districts had been financially responsible for placements in 'residential schools' prior to the 1985 amendment to RSA 193:27."

RSA 193:27, I, defines the term "home for children." The 1985 amendment to RSA 193:27, I, added "any residential school" approved by the board of education to the list of facilities included in the definition. "Residential schools" are private schools that provide regular education, special education, room and board, and other services to students. *See* Zelin, *Special Education and the Juvenile Justice System*, 34 N.H.B.J. 21, 23 (1993). Residential placements by the courts occur pursuant to RSA 169-B:22, 169-C:20, and 169-D:18, which require the joinder of "the legally liable school district for the limited purposes of directing the school district to determine whether the minor is educationally disabled . . . or to review the services offered or provided . . . if the child has already been determined to be educationally disabled."

■ Pursuant to RSA 186-C:13, I(a) (Supp. 1994), when an educationally disabled student is placed in a "home for children," liability for the student's special education expenses is determined in accordance with RSA 193:29 (1989). RSA 193:29 requires the school district where the child is deemed to reside (the "sending district") to reimburse the school district in which the "home for children" is located (the "receiving district") for some or all of the costs of the child's education:

I. For any child placed and cared for in any home for children . . . the sending district shall make payments to the receiving district as follows:

(a) For a child attending a public school in the receiving district who receives special education as required by RSA 186-C, the sending district is liable for either the average per pupil cost of the receiving district as estimated by the state board of education under RSA 193:4, or for the actual prorated cost of the special education and any educationally related services, as defined in RSA 186-C:2, provided by the receiving district, whichever is greater.

(b) For a child attending a public school to which the receiving district as defined in RSA 193:27 shall pay tuition under an AREA or other contractual agreement, the send-

ing district as defined in RSA 193:27 is liable for all costs which said receiving district must pay under that agreement.

(c) If a child is assigned to an out-of-district special education program, the sending district is liable for all costs under RSA 186-C.

The liability assessment thus may vary depending upon whether the child placed in the "home for children" attends a public school. A "residential school," which is a private entity and not part of a school district, would constitute an "out-of-district special education program," and the sending district would be liable for all costs incurred under RSA chapter 186-C, the chapter governing special education. Therefore, the 1985 amendment to RSA 193:27, I, has the effect of making the sending district liable for all special education costs of a child placed in a "residential school."

Prior to January 1, 1986, financial liability for all costs of court-ordered juvenile placements in "residential schools" was borne by the town in which the child resided. *See* RSA 169-B:40, I (Supp. 1985); RSA 169-C:27, I (Supp. 1985); RSA 169-D:29, I (Supp. 1985). Under RSA 194:1 (1989), "[e]ach town shall constitute a single district for school purposes . . . and the word 'town,' wherever used in the statutes in connection with the government, administration, support or improvement of the public schools, shall mean district." Therefore, prior to the 1985 amendment to RSA 193:27, I, a school district, or the town supporting the district, that sent a child to a "residential school" as part of a court-ordered placement bore greater costs, including the costs of residential services, regular public education, and any special education needs. *See* RSA 169-B:40, I (Supp. 1985); RSA 169-C:27, I (Supp. 1985); RSA 169-D:29, I (Supp. 1985); *cf. In re Todd P.*, 127 N.H. 792, 509 A.2d 140 (with respect to placement under RSA 169-B:40 (Supp. 1985), assumption is that special education portion of residential placement under juvenile justice laws is responsibility of school district sending the student); *In re Aaron D.*, 127 N.H. 493, 506 A.2d 286 (1985) (in residential placement pursuant to RSA 169-B:40 (Supp. 1983), "[e]xpenses incurred in the placement of delinquent children are payable by the town in which the minor resides" prior to placement); *In re Laurie B.*, 125 N.H. 784, 489 A.2d 567 (1984) (in residential placement pursuant to RSA 169-C:27, I (Supp. 1979), educational costs are liability of town, city, or county in which child is deemed to reside, with right of reimbursement from person legally liable for support of child); *In re Gary B.*, 124 N.H. 28, 466 A.2d 929 (1983) (under 1981 statutes then applicable, school district

in which child last resided "before placement in a [facility]" was liable for student's special education expenses).

■■ Not until 1986 did the State assume any part of the cost of a court-ordered placement in a residential school. Effective January 1, 1986, the division for children and youth services (now the division for children, youth, and families) assumed liability for certain costs of court-ordered juvenile placements, including seventy-five percent of the residential portion of the costs. Laws 1985, 380:58, III; *see* RSA 169-B:40, I, IV; RSA 169-C:27, I, IV; RSA 169-D:29, I, IV. The remaining twenty-five percent of the residential expenses are payable by the county from which the child was referred to the court ordering the placement. RSA 169-B:40, IV; RSA 169-C:27, IV; RSA 169-D:29, IV. The division for children, youth, and families, however, did not assume financial liability for special education costs; moreover, the current versions of the statutes provide that "expenses incurred for special education and educationally related services" are expressly excepted. *See* RSA 169-B:40, I(b) (1994); RSA 169-C:27, I(b) (1994); RSA 169-D:29, I(b) (1994). RSA 186-C:19-b (Supp. 1994) sets forth the present liability for educationally disabled children in court-ordered placements pursuant to RSA chapters 169-B, 169-C, and 169-D.

■■ Based on the foregoing analysis of the legislative matrix apportioning special education liability, we see no reason to disturb the trial court's conclusion that, prior to the 1985 amendment to RSA 193:27, the school district sending the child to a "residential school" pursuant to a court-ordered placement was liable for the student's special education costs. While our legal analysis may differ somewhat from the trial court's, the trial court reached the correct result. We therefore find that in this case the amendment did not create an unconstitutional, unfunded mandate because it does not represent a new, expanded, or modified program or responsibility to the school district in such a way as to necessitate additional local expenditures. *See* N.H. CONST. pt. I, art. 28-a; *In re Trailer and Plumbing Supplies*, 133 N.H. 432, 438, 578 A.2d 343, 346 (1990).

The plaintiff also argues that the trial court assumed facts not in evidence and made inferences favorable to the defendant instead of the plaintiff in granting the motion to dismiss this claim. We disagree. The issues in this case are entirely matters of law involving the interpretation of statutes. To the extent the plaintiff has made factual allegations in its pleadings, those facts relate to standing and are undisputed. Although the trial court's ruling is contrary to the legal conclusions drawn by the plaintiff, it is not adverse to any of the plaintiff's factual assertions. The plaintiff's

"[c]onclusions of law need not be accepted as true in ruling on motions to dismiss, and it is clearly within the province of the trial court to make legal rulings adverse to the plaintiff." *Provencal v. Vermont Mut. Ins. Co.*, 132 N.H. 742, 744, 571 A.2d 276, 278 (1990) (citations omitted).

We next address the plaintiff's argument that the trial court erred in ruling that RSA 186-C:2, I, and RSA 186-C:19-a, I, imposed a duty on school districts to enter the State prison to perform evaluations, develop individualized education plans, and hold annual staffings with school personnel.

 Under RSA 186-C:2, I, anyone between the ages of three and twenty-one with an education disability is defined as an "educationally disabled child." Generally, the school district that bears financial responsibility for the child's education, usually the district in which the child is deemed to reside, must develop an individualized education plan for an educationally disabled child. RSA 186-C:7, I (Supp. 1994). When an educationally disabled child is incarcerated at the State prison, RSA 186-C:19-a, I, sets forth which school district is responsible for developing the child's individualized education plan:

> I. For an educationally disabled child at the youth development center or the state prison, . . . the school district responsible for the development of an individualized education plan shall be as follows:
>
> (a) If such child is in the legal custody of the parent, the school district in which the child's parent resides shall be responsible.
>
> (b) If such child is not in the legal custody of the parent or if the parent resides outside the state, the school district in which the child most recently resided other than in a state institution, home for children or health care facility as defined in RSA 193:27 shall be responsible.
>
> (c) For the purposes of this section a parent shall not have legal custody if legal custody has been awarded to some other person or agency, even if that parent retains residual parental rights. An award of legal custody by a court of competent jurisdiction in this state or in any other state, shall determine legal custody under this section.

The plain language of these statutes makes clear that a school district is responsible for the development of an individualized

education plan for educationally disabled students between the ages of eighteen and twenty-one who are incarcerated at the prison.

We are not unmindful of the burden that the statutes place upon local school districts by requiring their personnel rather than corrections department personnel to develop individualized education plans for educationally disabled incarcerated students between the ages of eighteen and twenty-one. Whether to transfer that burden elsewhere, however, is a question for the legislature. *Cf. Merchants Mut. Ins. Co. v. Bean*, 119 N.H. 561, 565, 406 A.2d 457, 459 (1979) (whether minimum limits of financial responsibility law are adequate is question for legislature).

The plaintiff lastly argues that the trial court failed to construe the pleadings in the light most favorable to the plaintiff, and miscalculated in denying, as untimely, the plaintiff's motion for reconsideration. The plaintiff's argument that the trial court erred in applying the standard for motions to dismiss is unpersuasive. The determination is one of law, and it is "within the province of the trial court to make legal rulings adverse to the plaintiff." *Provencal*, 132 N.H. at 744, 571 A.2d at 278. The plaintiff's second procedural argument, even assuming its correctness, is without consequence because we affirm, as a matter of law, the trial court's ruling on the merits. *See Giles v. Giles*, 136 N.H. 540, 545, 618 A.2d 286, 289 (1992).

*Affirmed.*

BRODERICK, J., did not sit; BATCHELDER, J., retired, sat by special assignment under RSA 490:3; all who sat concurred.