Cheshire
No. 98-068

TOWN OF NELSON

v.

NEW HAMPSHIRE DEPARTMENT OF TRANSPORTATION

March 1, 2001

*Bonnette & Robinson*, of Keene (*William J. Robinson* on the brief and orally), for the Town of Nelson.

*Philip T. McLaughlin*, attorney general (*Mark P. Hodgdon*, senior assistant attorney general, on the brief and orally), for the State.

*H. Bernard Waugh, Jr.*, of Concord, by brief, for the New Hampshire Municipal Association, as *amicus curiae*.

BROCK, C.J. The plaintiff, the Town of Nelson (town), appeals from a ruling by the Superior Court (*Mangones*, J.) that the reclassification of two segments of Old Route 9 did not impose an unconstitutional, unfunded mandate on the town. The defendant, the New Hampshire Department of Transportation (State), cross-appeals, arguing that the trial court erred in ruling that the town's untimely appeal did not bar its challenge to the reclassification of Old Route 9. We affirm.

This dispute arose from the construction of a new bypass, which required the reclassification of certain segments of Old Route 9 in Nelson. Route 9 is the primary highway for access from Keene to Concord; it formerly ran along the shoreline of Granite Lake in the towns of Nelson and Stoddard. In the early 1990's, the State designed a bypass to Route 9, directing traffic away from Granite Lake.

In 1992, the State held a public hearing on the construction of the new bypass to address the town's request that the State continue to maintain the reclassified portions of Route 9 after the bypass was constructed and these portions were no longer part of Route 9. At the hearing, the Chairman of the Town's Board of Selectmen proposed that the State provide summer maintenance to the by-passed portions and that the town provide winter maintenance. The State and the town continued to negotiate after the hearing. The commissioner of the department of transportation issued a report of his findings, dated June 18, 1992, providing in part:

> [Segment A] will be reclassified as a Class V highway, and as such, will be maintained by the Town of Nelson. The State will repair or replace as needed all damaged guard-rail, catch basins, culverts, etc., and repave with an asphalt overlay [this segment] prior to its turnover to the Town of Nelson. . . . It is also noted that the State will increase the Block Grant Aid money made available to Nelson in pro-portion to its increased Class V highway mileage.

By letter dated December 28, 1995, the State formally reclassified three segments of Old Route 9; segments A and C are in dispute.

Segment A was reclassified from a class I State highway to a class V town highway. In its December letter, the State reiterated that it would increase the block grant aid money made available for this increased length of local roadway. Because segment A is now a town road, the town is now responsible for providing winter and summer maintenance. *See* RSA 231:3, I (Supp. 2000).

Segment C was reclassified from a class I State highway to a summer maintenance only class II highway. Under this classifica-tion, the town is only responsible for maintaining segment C in winter. *See* RSA 228:27 (1993).

At a March 1996 town meeting, the town presented warrant articles on whether to accept and maintain segments A and C of Old Route 9. The citizens voted "no" on both articles.

The town subsequently filed a petition for injunctive relief and declaratory judgment seeking a determination that the reclassifi-cation constituted an unfunded mandate in violation of Part I, Article 28-a of the New Hampshire Constitution (Article 28-a), and an injunction preventing the reclassification. The State countered that the town violated RSA 541:3 (1997) by not challenging the reclassification within thirty days. The trial court ruled that the reclassification was not unconstitutional and declined to dismiss the

declaratory judgment action as untimely. This appeal and cross-appeal followed.

On appeal, the town contends: (1) that the State's action in reclassifying certain segments of the road was unconstitutional absent the appropriation of additional State funding sufficient to cover any increased maintenance costs incurred by the town; and (2) that RSA 228:27 and :36 are unconstitutional. "As we have stated on numerous occasions, this court will not disturb the trial court's findings or rulings unless they are not supported by the evidence or are erroneous as a matter of law." *N.H. Munic. Trust Workers' Comp. Fund v. Flynn, Comm'r*, 133 N.H. 17, 21 (1990).

We first address the State's contention that the trial court erred in declining to dismiss the town's petition as untimely. *See* RSA 541:3, :6 (1997). The State argues that the issuance of the commissioner's report and the reclassification letter represented agency actions subject to appeal pursuant to RSA chapter 541 and that the town failed to challenge the actions for over four years, well past the thirty-day rehearing requirement, *see* RSA 541:3, and the thirty-day appeal period, *see* RSA 541:6. Therefore, the State contends, the town should be barred from pursuing this challenge. The trial court found that the town did not "appeal the administrative determination of the Commissioner on the time basis required for such appeals," apparently relying on RSA chapter 541. The trial court further stated that it was not persuaded that failure to appeal would necessarily bar consideration of a constitutional challenge.

The State has failed to cite any statute or authority that makes this reclassification of segments A and C of Old Route 9 subject to RSA chapter 541. RSA 541:2 provides: "When so authorized by law, any order or decision of the commission may be the subject of a motion for rehearing or of an appeal in the manner prescribed by the following sections." We have stated that "[a]ppeals from administrative proceedings may be taken under RSA chapter 541 only when so authorized by law." *In re Hoyt*, 143 N.H. 533, 534 (1999) (quotation omitted); *see also Petition of Lorden*, 134 N.H. 594, 597 (1991) (unless reference is made to chapter 541 in any given statute, an appeal under the provisions of chapter 541 is not authorized by law). Given the trial court's apparent application of RSA chapter 541, however, we will assume without deciding that RSA chapter 541 applies to the reclassification decision. *Cf. Appeal of Morrill*, 145 N.H. 692, 695 (2001).

■ Even assuming that RSA chapter 541 applies and that the town's appeal is untimely, we are not persuaded that the town is

barred from pursuing its constitutional challenge. By focusing on the town's untimely appeal of the reclassification, the State misconstrues the town's argument. The town never disputed the commissioner's authority to reclassify segments of a highway. Rather, the town contends that "unless the State, in making its reclassification, authorizes full funding to the Town, the State's actions constitute unfunded mandates in violation of our Constitution." Accordingly, the town does not challenge the reclassification decision itself, but instead asserts that the State has failed to comply with Article 28-a.

The town first argues that the trial court erred in ruling that the State did not create an unfunded mandate in violation of Article 28-a by reclassifying segments A and C without either fully funding maintenance or receiving approval from the town's voters.

Article 28-a provides:

> The state shall not mandate or assign any new, expanded or modified programs or responsibilities to any political subdivision in such a way as to necessitate additional local expenditures by the political subdivision unless such programs or responsibilities are fully funded by the state or unless such programs or responsibilities are approved for funding by a vote of the local legislative body of the political subdivision.

*See also* RSA 541-A:25 (1997). "Invoking th[is] constitutional prohibition requires both a mandate of responsibility to the political subdivision and a requirement of additional local political subdivision expenditures by virtue of the mandate." *Opinion of the Justices (Solid Waste Disposal)*, 135 N.H. 543, 545 (1992). Increased expenditures alone are not dispositive of whether a program or responsibility has been expanded. The reclassification of Old Route 9 does not violate Article 28-a because it is not a new or expanded responsibility or program. *See Nashua School Dist. v. State*, 140 N.H. 457, 461 (1995).

Two systems of highways have long existed in New Hampshire: those that are part of a statewide or regional transportation system maintained by the State, and those that are local in nature and maintained by the municipalities. *See Attorney-General v. Brooks*, 80 N.H. 70, 72 (1921).

Class V highways fall into the latter category. *See Kerouac v. Town of Hollis*, 139 N.H. 554, 555 (1995). Towns have historically been responsible for the local roads within their boundaries. *See* RSA 231:3. The segments at issue are local in nature and largely of local use. We have previously held that Article 28-a does not

preclude municipalities from reassuming financial responsibility for services for which they had been liable prior to its adoption in 1984. *See Nashua School Dist.*, 140 N.H. at 459-61.

While the town argues that the State's decision to reclassify these segments is controlled by our decision in *Flynn*, 133 N.H. at 17, we disagree. In *Flynn*, we held that a legislatively created presumption, which was enacted subsequent to the adoption of Article 28-a, was unconstitutional because it "mandate[d] a responsibility upon local government to provide benefits for illnesses not covered under prior law." *Flynn*, 133 N.H. at 25. The classification of roads in New Hampshire is a constantly evolving process which predates the adoption of Article 28-a. As the transportation needs of one area of the State grow, review of our highway system is undertaken and roads may move between the State-maintained system and the local system. *See* RSA ch. 240 (Supp. 2000); Laws 1998, ch. 306; Laws 1994, ch. 344; Laws 1986, ch. 203 (ten-year highway plan). Similar review is authorized at the local level, where a town may review the need for a road and decide either to discontinue it or limit its maintenance. *See, e.g.*, RSA 231:43 (Supp. 2000), :81 (1993).

In this case, the State has not created any new program nor required that the town accept a new responsibility. It has simply decided that a road which now serves only local traffic will no longer be part of the State-maintained highway system. That the contested segments now serve only local traffic may be a new development; the town's responsibility for maintaining roads that serve only local traffic is not new.

The town notes that RSA 228:27 authorized the commissioner to designate segment C for winter maintenance by the town. The commissioner was also authorized to designate segment A as a class V highway. Although RSA 231:3, I, provides that all class V highways are to be maintained by the city or town in which they are located, the commissioner's action did not mandate a new responsibility for the town regarding either segment. *See Nashua School Dist.*, 140 N.H. at 459-61. RSA 231:3 was first enacted in 1945; RSA 228:27 was amended in 1949 to authorize the commissioner to designate roads for winter maintenance. Both these statutes predate the adoption of Article 28-a in 1984. Through reclassification, the commissioner returned to the town responsibility for maintenance of this local mileage, which is subject to its preexisting obligations under RSA 231:3, I, and RSA 228:27. Adoption of the town's position would essentially limit the roads that a municipality

must maintain and require the State to maintain reclassified local roads or any newly constructed roadways. Accordingly, the State did not mandate any new, expanded or modified programs or responsibilities on the town in violation of Article 28-a. *See Nashua School Dist.*, 140 N.H. at 461.

In view of our determination that the reclassification did not create an unconstitutional unfunded mandate, we need not determine whether the enabling statutes, RSA 228:27 and :36, violate Article 28-a.

*Affirmed.*

JOHNSON, J., sat for oral argument but retired prior to the final vote; BRODERICK and DALIANIS, JJ., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred; NADEAU, J., dissented; NADEAU and DALIANIS, JJ., took part in the final vote by consent of the parties.

NADEAU, J., dissenting. When the commissioner of the department of transportation reclassified segment A from a class I State highway to a class V town highway, he did not obtain citizen approval for town funding of its maintenance. Nor did he determine and allot a sum for the State to contribute toward its maintenance, as allowed by statute. *See* RSA 228:36 (1981). By his action, therefore, I believe the State assigned a new, expanded or modified responsibility to the town in such a way as to necessitate an additional local annual expense, contrary to the State Constitution:

> The state shall not mandate or assign any new, expanded or modified programs or responsibilities to any political subdivision in such a way as to necessitate additional local expenditures by the political subdivision unless such programs or responsibilities are fully funded by the state or unless such programs or responsibilities are approved for funding by a vote of the local legislative body of the political subdivision.

N.H. CONST., pt. I, art. 28-a.

The majority relies on *Nashua School District v. State*, 140 N.H. 457 (1995), to hold that the State did not impose an additional obligation upon the town. In *Nashua*, we considered whether a 1985 amendment imposing upon towns the responsibility for funding special education costs of students placed in "residential schools" was an unfunded mandate. *See id.* at 459-61. We concluded that it was not, because the responsibility of the towns to fund special

education costs of students placed in "residential schools" was required by another statute before the amendment. *See id.* at 461.

The majority compares the special education costs in *Nashua* to the maintenance costs here, noting that class V highways, like "residential schools," have historically been the responsibility of towns, presumably under RSA 231:3, which was enacted before the adoption of Part I, Article 28-a. That responsibility, however, originates from the laying out of class V highways by cities and towns under RSA 231:1. And the law acknowledged a potential State responsibility for reclassified class V road maintenance, even before the adoption of Part I, Article 28-a. *See* RSA 228:36 (1981).

Nevertheless, the majority concludes that a new local expenditure, necessitated by State action creating a new class V highway, is not a new responsibility. I disagree. Even if that proposition were correct, however, the constitution protects towns against new *and* expanded or modified responsibilities requiring additional unfunded expenditures. The new $3,500 cost forced upon the town to maintain segment A necessarily expands or modifies the town's responsibilities. I believe this expansion and modification is contrary to the constitution.

Interestingly, the statute prohibiting the imposition of unfunded mandates in State agency rule-making, although not necessarily controlling here, provides that a State agency shall not mandate any "new, expanded or modified programs" including those functions of a nature customarily undertaken by municipalities whether or not performance of such functions is required by statute.

> Such programs also include, but are not limited to, functions such as police, fire and rescue, roads and bridges, solid waste, [and] sewer and water[.]

RSA 541-A:25, II (1997).

The State argues that the reclassification did not impose any new responsibilities on the town because the town could choose either not to maintain the road or to discontinue it. The State relies on *Opinion of the Justices (Solid Waste Disposal)*, 135 N.H. 543, 546-48 (1992), in which we held that proposed legislation prohibiting the disposal of recyclable materials was not an unfunded mandate. There, we concluded that although many towns might respond to the legislation by expending resources to create recycling programs, the towns had no obligation to provide those programs because they were free to allow any costs resulting from the legislation to be borne directly by their residents. *See id.* at 547.

Here, however, the town does not have a meaningful choice to avoid maintaining the State-created class V highway. It is helpful to remember the purpose of Part I, Article 28-a is to "provide a safety net to save cities and towns from the burden of coping with new financial responsibilities, not of their own creation, and to permit them a stronger grasp of their fiscal affairs." *N.H. Munic. Trust Workers' Fund v. Flynn, Comm'r*, 133 N.H. 17, 27 (1990).

The town can avoid responsibility to maintain a class V highway only by discontinuing the road, *see* RSA 231:43 (Supp. 2000), or by failing to maintain it in suitable traveling condition for five successive years, at which point it becomes a class VI highway. *See* RSA 229:5, VII (Supp. 2000). Either option, however, exposes the town to additional liability and expense for resulting damages. *See* RSA 231:48, :49, :90, :91 (1993).

The State also argues that the reclassification is not an unconstitutional unfunded mandate, but is an acknowledgment that future use and maintenance of the road is primarily a matter of "local control and local decisions." The State cites no authority for this proposition and I see no justification to conclude that Part I, Article 28-a excludes from its prohibition those State actions which involve primarily "local matters."

In fact, RSA 230:55-:62 (1993) provide procedures to deal with this "local matter." If the commissioner had followed these procedures, he could have sought to discontinue segment A instead of reclassifying it. In the process, the selectmen would have been given the opportunity to determine whether there was occasion for the use of segment A for town highway purposes. If the selectmen notified the commissioner that such occasion existed, the road would have become a class V highway by town request, not State mandate, and would be subject to town maintenance. If the town did not want to maintain segment A, it could have notified the commissioner that no occasion existed for its use and he could have discontinued use of the road. The State then, not the town, would have been responsible for any resulting damages as provided for in the statute. *See* RSA 230:61, :62 (1993).

It seems clear that the reclassification assigned a new, expanded or modified responsibility to the town, resulting in precisely the type of unilateral, unfunded State mandate the legislature and the citizens intended to prevent by proposing and adopting Part I, Article 28-a of the New Hampshire Constitution. For that reason, respectfully, I dissent.