Merrimack
No. 2011-462

CITY OF CONCORD & a.

v.

STATE OF NEW HAMPSHIRE & a.

Argued: March 13, 2012
Opinion Issued: August 31, 2012
Opinion Modified: September 28, 2012

*Orr & Reno, P.A.*, of Concord (*Jeffrey C. Spear* and *James P. Bassett* on the brief, and *Mr. Bassett* orally), for the petitioners.

*Michael A. Delaney*, attorney general (*Richard W. Head*, associate attorney general, and *Matthew G. Mavrogeorge*, assistant attorney general, on the brief, and *Mr. Mavrogeorge* orally), for the State.

*Getman, Schulthess & Steere, P.A.*, of Manchester (*Andrew R. Schulman* on the brief and orally), for the New Hampshire Retirement System.

LYNN, J. The petitioners, the City of Concord, the County of Belknap, and Mascenic Regional School District, appeal an order of the Superior Court (*McNamara*, J.) denying their motion for summary judgment and granting summary judgment in favor of the respondent, the State of New Hampshire. We affirm.

I

The pertinent facts are not in dispute. The New Hampshire Retirement System (NHRS) is a tax qualified pension trust for certain public employees. RSA 100-A:2 (2001). Under RSA chapter 100-A, police officers, teachers, and firefighters are required to be enrolled in NHRS. *See* RSA 100-A:3, I(a) (Supp. 2010) (amended 2011) ("Any . . . teacher, permanent policeman, or permanent fireman . . . shall become a member of [NHRS] as a condition of employment . . . ."); *see also* RSA 100-A:1, VI-IX (Supp. 2011) (defining the terms teacher, permanent policeman, and permanent fireman). Their employers, including local school districts, cities, and towns (local subdivisions), are required to contribute to the funding of retirement benefits for these employees. RSA 100-A:1, IV (Supp. 2011); RSA 100-A:16, II (Supp. 2010) (amended 2011).

RSA 100-A:16 (Supp. 2010) (amended 2011) sets forth the method used to finance NHRS. On a biennial basis, an actuary, as directed by the board of trustees, prepares a valuation of NHRS's assets and liabilities, and determines the amount of funds needed to finance NHRS. RSA 100-A:16. The funds required for financing NHRS come from investment returns, *see* RSA 100-A:15, I, I-a (Supp. 2010) (amended 2011), employee contributions, *see* RSA 100-A:16, I, and employer contributions, *see* RSA 100-A:16, II, III.

The employer contribution rate has two components: (1) the normal contribution, which is a percentage of each employee's earnable compen-

sation; and (2) the accrued liability contribution, which is essentially the amount by which NHRS is underfunded. RSA 100-A:16, II, III. Pursuant to RSA 100-A:16, the local subdivisions and the State share the responsibility for the employer contributions. From 1977 until 2009, RSA 100-A:16, II(b), (c) required all local subdivisions to annually contribute 65% of the employer contribution requirements for these employees, and the State to annually contribute 35% of the employer contribution requirements. *Compare* Laws 1977, 528:2 *with* Laws 2009, 144:52. In 2009, the legislature amended RSA 100-A:16, II to alter the percentages of the contributions required to be provided by the employers and the State from a 65/35 local-state split to a 70/30 local-state split in fiscal year 2010, and a 75/25 local-state split in fiscal year 2011. Laws 2009, 144:52 (hereinafter, section 52).[1]

The petitioners, on behalf of themselves and similarly situated municipalities, counties, and school districts, filed a petition for declaratory and injunctive relief, and damages in superior court, naming the State of New Hampshire and NHRS as respondents. The petition alleged that section 52 is an unfunded mandate that violates Part I, Article 28-a of the New Hampshire Constitution. Both the petitioners and the State moved for summary judgment. NHRS took no position on the constitutionality of section 52, but filed a separate motion for summary judgment, arguing that it was an improper party and that the New Hampshire Constitution and RSA 100-A:15, I, forbid it from using NHRS trust funds as the source of any monetary compensation to the petitioners. The trial court denied the petitioners' motion for summary judgment, granted the State's motion for summary judgment on the merits, and, accordingly, did not reach NHRS's motion. The petitioners appeal, arguing that the trial court erred in granting the State's motion for summary judgment, and maintaining that section 52 is an unconstitutional unfunded mandate.

## II

In reviewing the trial court's rulings on cross-motions for summary judgment, "we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law." *N.H. Assoc. of Counties v. State of N.H.*, 158 N.H. 284, 287-88 (2009) (quotation omitted). The issue on appeal is whether section 52 is an unfunded mandate in violation of Part I, Article 28-a of the New Hampshire Constitution. Article 28-a provides:

---

[1] During the 2011 session, the legislature enacted Laws 224:191, which amends RSA 100-A:16, II(b), (c) to impose upon local political subdivisions 100% of the employer contribution for the covered employees beginning in fiscal year 2013.

> The state shall not mandate or assign any new, expanded or modified programs or responsibilities to any political subdivision in such a way as to necessitate additional local expenditures by the political subdivision unless such programs or responsibilities are fully funded by the state or unless such programs or responsibilities are approved for funding by a vote of the local legislative body of the political subdivision.

N.H. CONST. pt. I, art. 28-a.

■ When required to interpret a provision of the constitution, we view the language used in light of the circumstances surrounding its formulation. *N.H. Assoc. of Counties*, 158 N.H. at 288; *N.H. Munic. Trust Workers' Comp. Fund v. Flynn, Comm'r*, 133 N.H. 17, 21 (1990). We give the words in question the meaning they must be presumed to have had to the electorate when the vote was cast. *N.H. Assoc. of Counties*, 158 N.H. at 288; *Flynn*, 133 N.H. at 21. In reviewing a constitutional challenge to a legislative act, we presume the act to be constitutional and will not declare it invalid except on inescapable grounds; that is, unless a clear and substantial conflict exists between the act and the constitution. *N.H. Assoc. of Counties*, 158 N.H. at 288.

## III

Before proceeding to an analysis of the constitutionality of the altered state-local NHRS employer contribution percentages under the statute at issue, it will be helpful to review our prior jurisprudence construing Article 28-a. We have addressed Article 28-a in just six cases. We first interpreted it in *Flynn*, in which we considered whether a statutory amendment creating a "prima facie presumption that cancer disease in a firefighter . . . is occupationally related" violated Article 28-a. *Flynn*, 133 N.H. at 20 (quotation omitted). Because it was our first decision addressing Article 28-a after its adoption in 1984, we "ascertain[ed] the meaning of [A]rticle 28-a [by examining] the language of the amendment itself." *Id.* at 22. "In particular, we focus[ed] on the phrase 'any new, expanded or modified program or responsibility.' " *Id.* We examined the definition of the term "responsibility" and determined that "the amendment was designed to prohibit the State from placing additional obligations on local government without either obtaining their consent or providing the necessary funding." *Id.* We also examined the statements of delegates to the constitutional convention and found that they supported our interpretation of the language. *Id.* at 21-26. We explained that the term "responsibility" is broader than the term "program" and is meant to "act as a sweeping prohibition against all State mandates that, for one reason or another, may

not be categorized as a program." *Id.* at 23. Ultimately, we concluded that "the constitutionality of a particular State mandate under [A]rticle 28-a does not hinge solely on whether or not it may be categorized as a new, expanded or modified program, but also on whether or not the mandate imposes upon local government an additional fiscal obligation." *Id.*

We then examined the statute being challenged "to determine whether it impose[d] such an obligation." *Id.* The trial court found that due to the presumption created by the statute, some firefighters would prevail on claims based upon cancers that were not actually work-related. *Id.* at 24. The trial court determined that the local subdivisions would bear increased costs due to providing benefits to these firefighters who, as a result of the presumption, would qualify for benefits even though their cancer was not work-related, as well as increased costs incurred in conducting pre-employment medical examinations. *Id.* We found no indication that these findings were unsupported by the record and held that the statute at issue "impose[d] upon local government a new fiscal obligation." *Id.*

■ The defendant argued that Article 28-a permits the legislature to make procedural adjustments to pre-existing legislative schemes. *Id.* We rejected this argument, explaining that in light of the plain language and legislative history, "[f]or us to hold otherwise would require that we rewrite the constitution, creating limitations that are not clearly expressed by the language contained therein." *Id.* at 26. We noted that Article 28-a "was designed to provide a safety net to save cities and towns from the burden of coping with new financial responsibilities, not of their own creation, and to permit them a stronger grasp of their fiscal affairs," and held that the challenged statute was unconstitutional. *Id.* at 27.

■ Our next occasion to address Article 28-a was in *Opinion of the Justices (Solid Waste Disposal)*, 135 N.H. 543 (1992), in which we interpreted *Flynn* to mean that "[i]nvoking [this] constitutional prohibition requires both a mandate of responsibility to the political subdivision and a requirement of additional local political subdivision expenditures by virtue of the mandate." *Id.* at 545. The issue in *Solid Waste Disposal* was the constitutionality of a proposed bill that "[set] priorities for the disposal of certain components of the solid waste stream." *Id.* at 543 (quotation omitted). Specifically, the proposed legislation would have "prohibit[ed] [the] disposal of certain goods by the solid waste generator, and [also would have] prohibit[ed] acceptance of those goods by a landfill, composting facility or incinerator for disposal." *Id.* at 546. It did not, however, require any affirmative action by the local subdivisions, such as recycling requirements. *Id.* We determined that "[a]lthough the practical effect in most towns and cities may be the establishment or continuation of . . . recycling

operations, this effect is not *mandated* by the proposed [legislation]." *Id.* at 547 (emphasis added). Because the proposed bill did not *mandate* any cost-creating responsibility, we held that it did not violate Article 28-a. *See id.* at 546-48.

Three years later, we decided *Nashua School District v. State*, 140 N.H. 457 (1995), in which we examined a 1985 statutory amendment to RSA 193:27, I (Supp. 1994), a provision of New Hampshire's education laws, dealing with the scope of a school district's responsibility "for the special education costs of students placed by the district or probate courts in 'residential schools.'" *Id.* at 458. Pursuant to New Hampshire law, whenever an educationally disabled child was placed in a "home for children," the school district where the child resided was required to reimburse the school district where the child attended school for certain education costs. *Id.* at 459. The amendment to RSA 193:27, I, did not alter the substantive reimbursement requirements of the statute, but rather amended the statute by adding "'any residential school' approved by the board of education" to the definition of the phrase "home for children." *Id.* at 459-62. The amendment thus "ha[d] the effect of making the [school district in which the child resided] liable for all special education costs of a child placed in a 'residential school.'" *Id.* at 460.

In determining whether the amendment to RSA 193:27, I, violated Article 28-a, we examined not only the change to RSA 193:27, I, but also various other statutes that dealt with the financial liability for costs of court-ordered juvenile placements in residential schools. *See id.* at 460-61. We noted that prior to the 1985 amendment to RSA 193:27, I, towns sending children to "residential schools" bore "greater costs, including the costs of residential services, regular public education, and any special education needs." *Id.* at 460. Accordingly, we held that because these obligations were previously mandated by other statutes, the 1985 amendment to RSA 193:27, I, adding residential schools to the education statute did not amount to a "new, expanded or modified program or responsibility to the school district in such a way as to necessitate additional local expenditures." *Id.* We concluded that "[w]hile our legal analysis may differ somewhat from the trial court's," we saw "no reason to disturb the trial court's conclusion . . . that the [statutory] amendment did not create an unconstitutional, unfunded mandate." *Id.*

■ Six years later, in *Town of Nelson v. N.H. Department of Transportation*, 146 N.H. 75, 78-79 (2001), we relied upon *Nashua School District* for the proposition that "Article 28-a does not preclude municipalities from reassuming financial responsibility for services for which they had been liable prior to its adoption in 1984." At issue in *Town of Nelson* was the

State's reclassification of certain portions of a highway. *Id.* at 75-78. Prior to the reclassification, the State was responsible for maintaining the highway segments in question. *Id.* at 76. After the reclassification, the Town of Nelson was responsible for providing maintenance for the reclassified segments for at least part of the year. *Id.* We determined that "the State ha[d] not created any new program nor required the town to accept a new responsibility," *id.* at 79, because "[t]owns have historically been responsible for the local roads within their boundaries," *id.* at 78. We therefore concluded that the reclassification was not an unconstitutional unfunded mandate. *Id.* at 79-80.

Justice Nadeau dissented in *Town of Nelson.* While acknowledging that towns had responsibility for maintaining local highways prior to the adoption of Article 28-a, he asserted that Article 28-a was not limited to new state-mandated responsibilities, but also applies to expanded or modified ones, and asserted that the additional funds which the municipality would be required to expend to maintain the reclassified segments of the highway constituted an expanded or modified responsibility. *See Town of Nelson,* 146 N.H. at 81 (Nadeau, J., dissenting). He also rejected the State's argument that the reclassification did not impose a new responsibility on the town because the town could choose either to maintain the reclassified roadway or discontinue it; in his view, this option did not present a "meaningful choice" because discontinuance (or failure to maintain) the highway exposed the town to liability for damages.[2] *Id.* at 81-82.

In *Opinion of the Justices (Voting Age in Primaries),* 157 N.H. 265, 274-75 (2008), we considered, among other things, whether a statutory amendment that would have given "certain seventeen-year-olds the right to vote in state and presidential primaries" violated Article 28-a. The challenged legislation also proposed to amend the voter registration form to be used throughout the state by adding a provision pertaining to the registration process for such seventeen-year-old voters. *Id.* at 274. The amendment would not have changed any of the registration requirements already imposed by statute, but would have added language "pertain[ing] to the proof of age required of certain seventeen-year-olds." *Id.* The court concluded that the proposed amendment "[did] not create any new program or require municipalities to accept a new responsibility." *Id.* "That [the proposed amendment] allows certain seventeen-year-olds to register and vote in primary elections 'may be a new development,' but municipal responsibility for processing all voter registrations is not new." *Id.* at 275.

---

[2] *See* RSA 231:48, :49 (2009). Although not mentioned in Justice Nadeau's dissent, we also observe that a town does not have unrestricted authority to discontinue a highway. *See, e.g., Town of Hinsdale v. Town of Chesterfield,* 153 N.H. 70 (2005).

Citing *Town of Nelson*, we again did not address whether this "new development" may be an "expanded or modified" responsibility and instead merely concluded that the proposed amendment would not create an unconstitutional unfunded mandate. *Id.*

We most recently discussed Article 28-a in *N.H. Assoc. of Counties*. There, we addressed the constitutionality of Laws 2007, chapter 263, which "realigned and consolidated the statutory scheme governing the relationship between the counties and the State financial support for the indigent elderly and disabled." *N.H. Assoc. of Counties*, 158 N.H. at 287. In 1998, several years before chapter 263 was enacted, the counties had approved a different statutory change that required the counties to cover additional costs for medical care of the indigent elderly and disabled. *Id.* at 286-87. The 1998 amendment contained a "sunset" provision stating that certain portions of the statutory scheme would be repealed on June 30, 2003. *Id.* at 286-87. However, the repeal was delayed. *Id.* at 287. In 2005, the legislature passed another amendment that increased the amount of certain payments required by the counties. *Id.* In 2007, the legislature passed chapter 263, the amendment challenged by the plaintiffs, which reorganized the statutory scheme. *Id.*

As a result of the enactment of chapter 263, some portions of the statutory scheme that were intended to be repealed by the sunset provision were repealed, but their substance was then incorporated into a different statutory provision. *Id.* Chapter 263 also increased the counties' share of certain costs from fifty to one hundred percent, but included a "hold harmless" provision for fiscal years 2009 and 2010 that "ensur[ed] that the counties [would] not be required to pay more than they paid under the prior statutory funding scheme." *Id.* While there was no "hold harmless" provision for fiscal years 2011 through 2013, the amendment did provide that caps on the total billings "shall be established" by the legislature for those years. *Id.* (quotation omitted).

The plaintiffs brought suit arguing that both the extensions of the sunset provision and the increase in the counties' share of certain costs violated Article 28-a. *Id.* Citing *Town of Nelson*, we first concluded that "the extension of the repeal date [was] merely a continuation of an obligation predating the enactment of Article 28-a, [and, therefore, chapter 263's] extension of the sunset [provision] does not violate Article 28-a." *Id.* at 290. As to the increased obligation from fifty to one hundred percent, we "presumed" that the change in the obligation was a "new, expanded or modified obligation," but concluded that, nonetheless, it was not a violation of Article 28-a for fiscal years 2009 and 2010 because the hold harmless provision prevented this statutory change from "impos[ing] a greater cost upon the counties." *Id.* at 290-91. As to fiscal years 2011 through 2013, we

determined that because the legislature intended to establish spending caps at a later date, the fiscal obligation of the counties for those years was merely speculative at the time of the appeal. *Id.* at 291. "Because there must be a clear and substantial conflict with the constitution to declare a legislative act unconstitutional," we could not say that the challenged amendment violated Article 28-a. *Id.*

Justice Duggan concurred in part and dissented in part in *N.H. Assoc. of Counties. Id.* at 292 (Duggan, J., concurring in part and dissenting in part). In his view, our prior cases had recognized an exception to Article 28-a for programs or responsibilities that were pre-existing obligations of local governmental subdivisions; that is, "obligations . . . the local governments funded prior to the adoption of Article 28-a, and are therefore required to continue funding." *Id.* at 295. However, he distinguished the legislative scheme at issue in *N.H. Assoc. of Counties* from those involved in prior cases. Specifically, unlike the situation in *Nashua School District*, in which, prior to the adoption of Article 28-a local governments had the sole responsibility for funding out-of-district school placements, the State's responsibility for part of the costs for the long term care of the indigent and disabled elderly pre-dated the constitutional amendment. *Id.* at 296. In addition, in his view, unlike in *Town of Nelson* and *Voting Age in Primaries*, the statutory scheme in *N.H. Assoc. of Counties* amounted to a change in local governments' responsibilities because it did not merely "influence" local functions, but "directly implicat[ed] local financial contributions." *Id.* Because he concluded that "[r]equiring local governments to assume greater financial responsibility is precisely what Article 28-a aims to prevent," *id.*, Justice Duggan opined that the portion of the statutory scheme that extended the counties' increased financial obligations beyond the period to which they had consented without providing offsetting state funding or credits violated Article 28-a, *see id.* at 297-98.

## IV

With the above cases in mind, we turn to the issue before us on appeal. The petitioners argue that the trial court "adopted three peculiar readings of Article 28-a that are at odds with [the] fundamental purposes [discussed in *Flynn*]." In particular, they contend that, in light of *Flynn*, the trial court's conclusion that section 52 did not violate "the two part test . . . established in *Town of Nelson*, [146 N.H. at 78]," because it modified their financial contributions directly rather than by modifying an underlying activity, "employs an impermissibly narrow conception of Article 28-a's scope." The petitioners maintain that the scope of Article 28-a "is broad, encompassing any responsibility or obligation for which a local government is likely to be called upon to answer." (Quotation omitted.) They further

assert that it prohibits the legislature from making procedural adjustments to pre-existing legislative schemes that have the effect of increasing the financial burden imposed upon the local political subdivisions. The State, in contrast, argues that because the petitioners have always had the responsibility to provide some retirement benefits, the change required by section 52 is not an expanded or modified program or responsibility.

In addressing the parties' arguments, we acknowledge at the outset that reconciling our cases elucidating the meaning of Article 28-a is not an easy exercise. Nonetheless, we believe that careful scrutiny of our cases reveals that the following four elements must be present before Article 28-a is violated: (1) the State must *mandate* or *assign* to a local subdivision (2) a *program or responsibility* (3) that is new, expanded or modified from what existed before the state action, and which (4) necessitates additional expenditures by the local subdivision. Thus, where, as in *Solid Waste Disposal* and *Town of Nelson*, state action merely creates circumstances or conditions that may influence local governments to adopt new responsibilities but does not unequivocally require them to do so, there is no violation of Article 28-a. Furthermore, although in *Flynn* we broadly construed the term "responsibility" as used in Article 28-a to mean any state requirement that "imposes upon local government an additional fiscal obligation," *Flynn*, 133 N.H. at 23, our subsequent cases have narrowed this expansive interpretation of the amendment's reach. *Town of Nelson* began this process by establishing that an increase in expenditures alone is not dispositive of whether a program or responsibility has been expanded or modified. *Town of Nelson*, 146 N.H. at 78. That case was thereafter cited with approval in both *Voting Age in Primaries*, 157 N.H. at 275, and *N.H. Assoc. of Counties*, 158 N.H. at 289. Collectively, these cases stand for the proposition that where a local subdivision has historically had responsibility for the subject matter of the mandate, some change in the scope of that responsibility does not result in a violation of Article 28-a.[3] Following the reasoning of these post-*Flynn* cases, the trial court in this case based its decision upon the fact that the petitioners' obligation to contribute to the funding for their employees who are required to participate in NHRS had existed for many years before Article 28-a was adopted.

---

[3] For example, in *Town of Nelson*, the fact that, following reclassification by the State, the town was responsible for maintaining portions of Old Route 9 that it had not been responsible for prior to the reclassification did not violate Article 28-a. Similarly, no constitutional violation was found in *Voting Age in Primaries*, notwithstanding that the proposed legislation would require local political subdivisions to register persons (certain seventeen-year-olds) who would not have been eligible to vote without the legislation.

 After thoroughly reviewing the cases following *Town of Nelson*, we conclude that they can be interpreted in one of two ways: (1) limiting the scope of Article 28-a to prohibit the State from mandating or assigning only new responsibilities, but not expanded or modified responsibilities; or (2) construing the term "responsibility" to mean something more than merely a financial obligation. Because the first reading would "creat[e] limitations that are not clearly expressed by the language," *Flynn*, 133 N.H. at 26, and would be inconsistent with our understanding of the legislative history and purpose of Article 28-a as explained in *Flynn*, we do not read the cases in this fashion. "[W]e will not redraft the constitution in an attempt to make it conform to an intention not fairly expressed in it." *Id.* at 21 (quotation omitted). Instead, we conclude that *Town of Nelson, Voting Age in Primaries* and *N.H. Assoc. of Counties* reflect a more nuanced interpretation of the meaning of "responsibility" than that articulated in *Flynn*. So while we adhere to *Flynn's* teaching that the word "responsibility" has a broader meaning than "program" and connotes some type of "obligation," the obligations within the purview of Article 28-a are not merely requirements that the local subdivision incur increased expenditures.

 Indeed, to the extent "responsibility" could mean simply an obligation to spend money, then the operative language of Article 28-a would read, in essence, as follows: "The state shall not mandate or assign any new, expanded or modified programs or [expenditures] to any political subdivision in such a way as to necessitate additional local expenditures by the subdivision . . . ." But, of course, this is not what the amendment says — the first clause of the amendment speaks of "responsibilities," whereas the second clause speaks of "expenditures," and to adopt a construction that gives these terms the same meaning runs afoul of the well-recognized principle of construction that where the enacting body "uses two different words, it generally means two different things." *Guildhall Sand & Gravel v. Town of Goshen*, 155 N.H. 762, 765 (2007); *see also John A. Cookson Co. v. N.H. Ball Bearings*, 147 N.H. 352, 357 (2001) ("It is proper to presume that the legislature was aware of the difference between . . . words and chose to use them advisedly . . . ."). The language actually used in the amendment demonstrates an intention to distinguish between programs and responsibilities, on the one hand, and expenditures, on the other.[4] Accordingly, we conclude that to constitute a new, expanded or modified "responsibility," the state action must impose some substantive change to

---

[4] We note here that while the *Flynn* court thought its broad construction of "responsibilities" was necessary to distinguish it from "programs," a term also used in Article 28-a, *see Flynn*, 133 N.H. at 23, it gave no consideration to whether such broad construction had the effect of improperly conflating "responsibilities" with "expenditures."

an underlying function, duty or activity performed or to be performed by local government. Contrary to the assertions of the petitioners and the dissent, our conclusion in this regard does not amount to an overruling of *Flynn*, and there is, therefore, no need to conduct a *stare decisis* analysis. This case is distinguishable from *Flynn* in an important respect: the statute at issue in that case *did* impose an additional substantive responsibility on local subdivisions. The presumption it created had the effect of requiring them to provide workers' compensation benefits to some firefighters afflicted with cancer who would not theretofore have received benefits without the presumption. *See Flynn*, 133 N.H. at 24 ("[T]he effect of the legislative change is to mandate a responsibility upon local government to provide benefits for illnesses not covered under the prior law."); *see also id.* at 28-29 (Souter, J., dissenting) (explaining that the effect of the new presumption was to create two new classes of firefighter claimants — those without work-related cancers who would nonetheless receive benefits because local governments were unable to rebut the presumption, and those with work-related cancers who would receive benefits to which they would not have been able to show entitlement without the presumption — and that the statute violated Article 28-a only as respects the first category). Here, by contrast, section 52 makes no changes to the scope of retirement benefits local subdivisions are required to provide to police officers, firefighters and teachers. Thus, although our methodology for evaluating claims under Article 28-a has evolved over the years since *Flynn* was decided, the result reached in that case would in all likelihood be the same under the analysis we employ today.

 There is also no indication that the amendment was designed to delegate to local governments effective control over the establishment of the state budget and appropriations. Indeed, to interpret the amendment in such fashion would bring it into conflict with Part II, Article 2 of the State Constitution, which confers "the supreme legislative power" of the State on the House of Representatives and the Senate. Without a far more explicit indication that the people intended such a substantial alteration of fundamental legislative power, we decline to read Article 28-a in this fashion. *See Izazaga v. Superior Court (People)*, 815 P.2d 304, 314 (Cal. 1991) ("Rudimentary principles of construction dictate that when constitutional provisions can reasonably be construed so as to avoid conflict, such a construction should be adopted."); *Advisory Opinion to the Governor*, 96 So. 2d 541, 545 (Fla. 1957) ("[W]here a constitutional provision will bear two constructions, one of which is consistent with, and the other inconsistent with, an intention clearly expressed in another section, the former construction should be adopted so that both provisions may stand and have effect."

(quotation omitted)); *see also City of New Orleans v. Assessors' Retirement Fund*, 986 So. 2d 1, 15 (La. 2007) ("As a general rule, articles of the constitution are to be construed and interpreted using the same canons of interpretation applicable to statutes and written instruments."); *cf. Swiezynski v. Civiello*, 126 N.H. 142, 148 (1985) ("Where reasonably possible, statutes should be construed as consistent with each other.").

■ Although the State has subsidized a portion of the retirement benefits of local police officers, firefighters, and teachers for many years, these individuals are and always have been employees of the local subdivisions. The State controls neither the number of such individuals employed by local governments, nor the salaries they are paid. Yet it is these factors that largely determine the amount of the employer contribution to NHRS. Consequently, if Article 28-a were construed so as to prohibit the legislature from adjusting (or eliminating) the State's contribution to NHRS for such employees, the State would effectively be at the mercy of local governments with respect to the *state* budgeting and appropriations process. Nothing in the text or history of Article 28-a indicates that such a result was contemplated, or that the amendment was intended to circumscribe the "supreme authority" of the legislature in these areas by requiring it to fund local functions over which it has no effective control.

■ The petitioners do not dispute the fact that the local subdivisions have long been required to participate in NHRS. As the trial court accurately noted, and the State now asserts, section 52 does not modify this requirement, or change any underlying activity or function. It does not, for instance, require an additional category of local employees to be part of NHRS. Rather, it merely shifts part of the financial obligation for funding NHRS from the State to the local subdivisions without altering any underlying activities. While section 52 results in increased expenditures, as we have stated before, increased expenditures alone are not a violation of Article 28-a. *See Town of Nelson*, 146 N.H. at 78.

Although we do not decide the ultimate importance of this factor here, we find it significant that the responsibility to participate in NHRS existed before the ratification of Article 28-a. Accordingly, today's decision should not be read to imply that the State could circumvent Article 28-a by requiring local subdivisions to implement new state-funded programs or responsibilities, and then, in later years, shift the costs of such activities to the local subdivisions.

*Affirmed.*

DALIANIS, C.J., and HICKS, J., concurred; CONBOY, J., dissented.

CONBOY, J., dissenting. Because, in my view, section 52 contravenes the plain language of Part I, Article 28-a, I would hold that section 52 constitutes an unconstitutional unfunded mandate.

Article 28-a provides:

> The state shall not mandate or assign any new, expanded or modified programs or responsibilities to any political subdivision in such a way as to necessitate additional local expenditures by the political subdivision unless such programs or responsibilities are fully funded by the state or unless such programs or responsibilities are approved for funding by a vote of the local legislative body of the political subdivision.

N.H. CONST. pt. I, art. 28-a. The only case in which we have previously interpreted the language of this constitutional amendment is *New Hampshire Municipal Trust Workers' Compensation Fund v. Flynn, Commissioner,* 133 N.H. 17 (1990), the first of our cases involving a challenge under it. In *Flynn,* we found that the statute at issue "impose[d] upon local government a new fiscal obligation," *id.* at 24, and was therefore unconstitutional, *id.* at 27. In coming to this conclusion, we considered the import of the word "responsibilities," as used in the amendment, and examined the dictionary definitions of the words "responsibility" and "responsible." *Id.* at 22. We explained that a "responsibility" is "something for which anyone is responsible or accountable." *Id.* (quotation omitted). We stated that the definitions "indicate[d] that [Article 28-a] was designed to prohibit the State from placing additional obligations on local government without either obtaining their consent or providing the necessary funding." *Id.*

Under this same straightforward construction of Article 28-a, I conclude that section 52 mandates an expanded responsibility — an increased financial obligation. Prior to the enactment of section 52, the local political subdivisions had a legislatively imposed obligation to provide retirement benefits, through NHRS, to teachers, firefighters, and police officers, at a contribution rate of 65% of the total employer contribution. This is an obligation for which the local political subdivisions are accountable — that is, a "responsibility." Section 52 imposes a mandatory increase in this obligation from 65% of the employer contribution to 70%, and then to 75%, and, thus, constitutes a "new, expanded or modified" responsibility.

After conducting a review of our relevant case law, the majority concludes that the mandated "responsibility" as used in Article 28-a is actually "more nuanced" than the interpretation we gave it in *Flynn* and that its meaning is limited to state action that imposes "some substantive change to an underlying function, duty or activity performed or to be performed by local government." However, nothing in Article 28-a states, or

even implies, that the amendment only prohibits the State from mandating a "responsibility" that imposes a new, expanded, or modified "substantive" obligation, as distinguished from a new, expanded, or modified *financial* obligation. Indeed, the purpose of Article 28-a indicates that the citizens of New Hampshire understood that Article 28-a prohibits additional financial obligations pressed upon local governments by the State. As we explained in *Flynn*, 133 N.H. at 27, Article 28-a "was designed to provide a safety net to save cities and towns from the burden of coping with new *financial responsibilities*, not of their own creation." (Emphasis added.) We also noted that delegates to the Constitutional Convention explained that Article 28-a "prevent[s] the State Legislature from mandating new programs, services, or *expenses* to local [subdivisions]" and that "[i]t is a clear and simple statement from the people in the local communities to state government to keep local budgets local." It also "tells the Legislature that the communities no longer want the state government to mandate local *spending*." *Id.* at 22-23. More importantly, the Voters' Guide, which was prepared "[t]o help the voters understand the proposed amendment," explained that if the amendment were to be adopted, "[t]he state [would] be prohibited from requiring localities to *expend funds* for any new or expanded portion of a program or responsibility unless the state provides the necessary funds for the localities to spend or unless the local legislative body agrees to provide its own funding for the new or expanded program or responsibility." *Id.* at 19 (emphasis added; quotation omitted).

By rejecting the interpretation we assigned to the word "responsibility" in *Flynn*, the majority implicitly overrules that interpretation without engaging in a *stare decisis* analysis. It avoids doing so by asserting that our more recent cases, such as *Town of Nelson v. New Hampshire Department of Transportation*, 146 N.H. 75 (2001), *Opinion of the Justices (Voting Age in Primaries)*, 157 N.H. 265 (2008), and *New Hampshire Assoc. of Counties v. State of New Hampshire*, 158 N.H. 284 (2009), reflect a modified interpretation. None of these decisions, however, overruled *Flynn*; nor did we, in any of them, engage in constitutional interpretation, discuss the meaning of the word "responsibility," or examine the history of Article 28-a. In fact, until now, *Flynn* is the only case in which we have expressly interpreted the language of Article 28-a. We also explained that when reviewing provisions of the constitution, we "view the language used in light of the circumstances surrounding its formulation." *Flynn*, 133 N.H. at 21. Thus, our interpretation of Article 28-a, six years after its passage, took account of its history. By contrast, the majority's interpretation now, twenty-eight years after Article 28-a's passage, is based not on the amendment's plain language or its history, but rather on case law, the reconciliation of which, as the majority acknowledges, is not "an easy

exercise." In my judgment, the majority opinion thus has the effect of either rewriting the language of Article 28-a, or reinterpreting its language in a way that is inconsistent with its history and our express interpretation of its meaning in *Flynn*.

After adopting a new, "more nuanced," meaning for the word "responsibility," the majority concludes that because section 52 does not alter the local subdivisions' basic responsibility to provide retirement benefits through NHRS, and does not modify any other "substantive" or "underlying" responsibility, it does not mandate a new, expanded or modified responsibility. In my view, however, the majority does not adequately explain why a financial obligation is not a "substantive" responsibility. Nor does the majority account for the fact that at the heart of the enactment of Article 28-a is the goal of preventing the State from adding to the financial burdens of local governments without their consent. *See id.* at 22-23.

Moreover, the majority's interpretation of "responsibility" is inconsistent with the surrounding language of Article 28-a. The text of the amendment provides that the State shall not mandate "*any* new, expanded, or modified . . . responsibilities." The use of the word "any" indicates that "responsibilities" has a broad, unqualified meaning, not limited to state action that imposes "some substantive change to an underlying function, duty or activity," as the majority concludes. The plain language of the constitution is the paramount source of its meaning. *See Bd. of Trustees, N.H. Judicial Ret. Plan v. Sec'y of State*, 161 N.H. 49, 53 (2010). We must take great care in ensuring that we do not deviate from that language; we may not "redraft the constitution in an attempt to make it conform to an intention not fairly expressed in it." *Flynn*, 133 N.H. at 21 (quotation omitted).

The trial court based its conclusion, in part, on the fact that participation in NHRS was required before section 52, and this requirement was not changed by it, noting that we have previously stated that "increased expenditures alone are not dispositive of whether a program or responsibility has been expanded." *N.H. Assoc. of Counties*, 158 N.H. at 288 (quotation omitted). The majority similarly acknowledges that section 52 results in increased expenditures, but explains that "increased expenditures alone are not a violation of Article 28-a." That increased expenditures *alone* are not dispositive, however, does not support the conclusion that a mandate directly requiring increased expenditures cannot be a violation of Article 28-a. As the needs of NHRS grow over time, the local subdivisions may well experience increased expenditures pursuant to the 65% contribution obligation; such increased expenditures alone, of course, would not evidence a violation of Article 28-a. Rather, it is the mandatory increase in the local subdivisions' percentage share of the required contribution,

*compare* Laws 1977, 528:2 *with* Laws 2009, 144:52, that constitutes the violation because it mandates an expanded responsibility, which, by its terms, necessitates additional local expenditures. Indeed, the State acknowledges that section 52 "increases expenditures for local governments." *Cf. Opinion of the Justices (Solid Waste Disposal)*, 135 N.H. 543, 547 (1992) (finding that the subject legislation was not an unfunded mandate because although it prohibited the disposal of certain materials by a solid waste generator, it did not require any affirmative action by the local subdivisions that would necessitate additional local expenditures).

Nor do our cases following *Flynn* warrant the conclusion reached by the majority. For example, in *Nashua School District*, we stated only basic propositions about Article 28-a, explained the challenged statute and the relevant statutory schemes, and then concluded without further explanation or any specific analysis that the legislation at issue was not an unconstitutional unfunded mandate. Similarly, in *Voting Age in Primaries*, we concluded, without detailed explanation, that the statute at issue did not violate Article 28-a. Our conclusions in those two cases that the subject legislation did not constitute "new" responsibilities addressed only part of the required analysis; Article 28-a encompasses not only *new* responsibilities, but also *modified* or *expanded* responsibilities. *See N.H. Assoc. of Counties*, 158 N.H. at 294 (Duggan, J., concurring in part and dissenting in part) ("[T]he 'sweeping prohibition' created by the term 'responsibility' within Article 28-a . . . includes not only new responsibilities but also modified and expanded responsibilities."). Moreover, in our most recent Article 28-a decision, *New Hampshire Assoc. of Counties*, our conclusion that the subject legislation did not constitute an unconstitutional unfunded mandate was based upon the fact that, ultimately, the counties were not subject to any "additional fiscal requirement[s]." *Id.* at 290-91.

Teachers, firefighters, and police officers employed by local government are required to participate in NHRS as a condition of employment. RSA 100-A:3, I(a). The local governments thus do not have the option to withdraw these employees from NHRS and as their employers, may not decline to contribute to its funding. RSA 100-A:1, IV; RSA 100-A:16, II. The effect of section 52, therefore, is to impose additional financial expenditures on local governments that have no choice but to comply. Article 28-a was adopted by the citizens of this state for the purpose of preventing precisely the action mandated by section 52. The majority, however, is concerned that if the court holds that section 52 violates Article 28-a, "the State would effectively be at the mercy of local governments with respect to the *state* budgeting and appropriations process." But ultimately it is the State's responsibility to budget in a manner that does not violate our constitution. Financial consequences of compliance with our constitution cannot justify

relief from its plain language. Moreover, given their obligations to the people in their communities regarding education and police and fire protection, it is doubtful that the local subdivisions would make budgetary decisions with an eye toward controlling the State's budget.

Because I conclude that section 52 constitutes an unfunded mandate prohibited by Article 28-a, I respectfully dissent.